## COMMONWEALTH *vs.* FLORENCE NICKERSON.

Suffolk.   July 9, 1920. — September 17, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, &
JENNEY, JJ.

*Intoxicating Liquor.   Constitutional Law,* Concurrent power.   *Jurisdiction.
Evidence,* Matter of common knowledge.   *Words,* "Concurrent," "Concurrent
power," "Intoxicating liquor," "Appropriate legislation."

Statement by RUGG, C. J., of different judicial definitions of the word "concurrent."

Since, at the time of the adoption of art. 18 of the Amendments to the Constitution
of the United States, there was no such universal or settled definition of the word
"concurrent" as to lead to the conviction that it was employed in § 2 of the
amendment, in reliance upon a judicially established meaning, its meaning
as there used must be determined from its context, the purpose sought to be
accomplished and a consideration of authoritative adjudications where the
discussion of kindred constitutional problems has been involved.

By the words of § 2 of art. 18 of the Amendments to the Constitution of the
United States, the Commonwealth possesses a continuous and independent power
to enact legislation actually tending to render efficient, through its executive and
judicial departments, the terms of that amendment, which legislation, in defi-
nitions, administrative agencies and penalties, may differ from but cannot be
antagonistic to legislation enacted by Congress to carry out the purposes of the
amendment.

State legislation, so far as in its practical operation it is appropriate to enforce the
chief aim of art. 18 of the Amendments to the Constitution of the United
States and to make it more completely operative in all its amplitude, is not
suspended, superseded, set aside nor rendered inapplicable in its denouncements
by 41 U. S. Sts. at Large, 305, known as the Volstead act, in so far as it is not
incompatible with or in contravention of the provisions of that federal statute.

While, since the adoption of art. 18 of the Amendments to the Constitution of the
United States and the enactment of the Volstead act, 41 U. S. Sts. at Large, 305,
such provisions of R. L. c. 100, as authorize under any circumstances sales of
intoxicating liquor for beverage purposes are inoperative, that entire chapter
has not been abrogated, but such provisions thereof as tend toward the enforce-
ment of the amendment's main purpose of prohibiting the sale of intoxicating
liquor for beverage purposes and are not repugnant to the provisions of the
Volstead act in the sense that they are antagonistic to its provisions and cannot
be enforced concurrently with it remain in effect and the courts of the Common-
wealth have power and jurisdiction to enforce them.

While the implied authority to sell liquor containing alcohol in excess of one half
of one per cent and less than one per cent, which, by inference from the failure to
prohibit such sales, was conferred by R. L. c. 100, §§ 1, 2, was made inoperative
by the provisions of the Volstead act, 41 U. S. Sts. at Large, 305, the provisions
of that chapter of the Revised Laws which aim at the suppression of sales of
liquor containing more than one per cent of alcohol remain in force, since they

tend toward the same result as that sought by the Volstead act and seek to attain that result by means in harmony with its provisions.

The definition of intoxicating liquor in R. L. c. 100, § 2, manifests but a small practical difference from that in Title II, § 1, of 41 U. S. Sts. at Large, 305, the Volstead act, cannot be said as matter of law to include liquor in fact intoxicating, is not unreasonable, does not authorize that which the Volstead act forbids but merely fails to punish some conduct which the Volstead act denounces, provides rational and effective means for the enforcement of the chief aim of art. 18 of the Amendments to the Federal Constitution, and therefore is not obstructive of the provisions of and the purposes sought by the amendment and the Volstead act.

The provisions of R. L. c. 100, concerning the prohibition of sales of intoxicating liquor, the definition of intoxicating liquor, the penalties for the violations of these and similar provisions, and the means of enforcing them, constitute an exercise of the legislative power of the Commonwealth which, under § 2 of art. 18 of the Amendments to the Federal Constitution, giving to Congress and the several States "concurrent power" to enforce the article by appropriate legislation, the courts of this Commonwealth still have power and jurisdiction to enforce.

The circumstance that R. L. c. 100 was enacted and was in force previous to the adoption of art. 18 of the Amendments to the Federal Constitution, does not prevent the above described provisions of that statute from being "appropriate legislation," by which, under the "concurrent power" granted by § 2 of the amendment, the amendment may be enforced by the Commonwealth.

Even if that part of R. L. c. 100, § 2, which fixes "any beverage which contains more than one per cent of alcohol, by volume, at sixty degrees Fahrenheit," as a test of what "shall be deemed to be intoxicating liquor within the meaning of this chapter," is suspended and made of no force by the Volstead act, nevertheless a sale of whiskey would be a violation of those provisions of the State statute which remain enforceable since the enactment of the Volstead act, both because, being a "distilled spirit," whiskey is included in the definition of intoxicating liquor in § 2 of the statute as well as by name in the definition in § 1 of Title II of the Volstead act, and because, as a matter of common knowledge, it is an intoxicating liquor.

COMPLAINT, received and sworn to in the Municipal Court of the City of Boston on February 13, 1920, charging the defendant with unlawfully selling intoxicating liquor on February 12, 1920, "not having then and there any license, authority or appointment, according to law, to make such sale."

On appeal to the Superior Court, the defendant filed a motion to quash the complaint, a motion to dismiss the complaint for want of jurisdiction, and a plea in bar. The questions raised by the motions and the plea related to the jurisdiction of the courts of the Commonwealth in cases involving the sale of intoxicating liquor since the passage of the Eighteenth Amendment to the Constitution of the United States and of 41 U. S. Sts. at Large, 305, the national prohibition act, commonly called the Volstead

act, more specifically of Title II of that act. The motion to quash was made both upon this ground and on the ground that no offence was set forth in the complaint because the laws of the Commonwealth in respect to the sale of intoxicating liquor are no longer in effect since the passage of the constitutional amendment and of the Volstead act.

The motions and the plea were heard by *Dubuque,* J., and were overruled.

The defendant then was tried before the same judge. Material evidence at the trial is described in the opinion.

At the close of the evidence the defendant asked for the following rulings:

"1. On all the evidence the jury must return a verdict of not guilty.

"2. No offence against the laws of the Commonwealth is disclosed by the evidence as having been committed by the defendant on the date alleged in the complaint and the jury must return a verdict of not guilty.

"3. On the date alleged in the complaint there was in effect no law of the Commonwealth making the sale of intoxicating liquor unlawful.

"4. The Eighteenth Amendment to the Constitution of the United States, which was in effect on the date alleged in the complaint, supersedes the laws of the Commonwealth relating to the sale of intoxicating liquor enacted prior to the said Eighteenth Amendment, and no law of the Commonwealth was in effect on the date of the complaint unless enacted subsequent to and for the purpose of carrying into effect the said Eighteenth Amendment.

"5. On the date alleged in the complaint there was no law of the Commonwealth carrying into effect the provisions of the Eighteenth Amendment to the Constitution of the United States.

"6. On the date alleged in the complaint the only law in effect in this Commonwealth relating to the sale of intoxicating liquors was chapter 83 [85] of the Acts of the Sixty-sixth Congress of the United States, first session (Volstead act).

"7. Chapter 83 [85] of the Acts of the Sixty-sixth Congress of the United States, first session (Volstead act), which was in effect on the date of the complaint, superseded all laws of this Common-

wealth relating to the sale of intoxicating liquors which were in existence on the date of the complaint.

"8. Neither this court nor any court of the Commonwealth has jurisdiction of any offence committed against chapter 83 [85] of the Acts of the Sixty-sixth Congress of the United States, first session.

"9. According to the decision of the Supreme Court of the United States, in the case of Rhode Island *v.* Palmer, Attorney-General, [253 U. S. 350] rendered on the seventh day of June, 1920, in the absence of appropriate legislation by State legislators to put into effect the Eighteenth Amendment to the Constitution of the United States, the only law relating to the sale of intoxicating liquors is chapter 83 [85] of the Acts of the Sixty-sixth Congress of the United States, first session, and said chapter 83 [85] is the paramount law in all the states.

"10. According to the decision of the United States Supreme Court in the case of Rhode Island *v.* Palmer, Attorney-General, rendered June 7, 1920, the Legislature of this Commonwealth not having enacted on or previous to the date alleged in the complaint any legislation appropriate to the enforcement of the Eighteenth Amendment to the Constitution of the United States, the only law in the Commonwealth on that date was chapter 83 [85] of the Acts of the Sixty-sixth Congress of the United States, first session, and this court has no jurisdiction of any offence against that law.

"11. The Congress of the United States under the Eighteenth Amendment to the Constitution of the United States had power to make laws relating to the sale of intoxicating liquor and on the date of the complaint had made such a law, to wit, chapter 83 [85] of the Acts of the Sixty-sixth Congress of the United States, first session, which was the supreme law of the land, and the laws of the Commonwealth relating to the sale of intoxicating liquor enacted prior to that date are inconsistent and at variance with said chapter 83 [85] and, therefore, the laws of the Commonwealth relating to that subject are void and of no effect."

The judge refused so to rule. The defendant was found guilty.

After the verdict and before the entry of judgment, the defendant filed a motion in arrest of judgment, raising the same

questions that were raised by the motions and plea filed before trial and by the requests for rulings herein set forth. This motion also was overruled.

The judge thereupon reported the case for determination by this court.

The case was argued at the bar in July, 1920, before *Rugg,* C. J., *Braley, De Courcy, Crosby, & Carroll,* JJ., and afterwards was submitted on briefs to all the Justices.

*A. M. Burroughs,* for the defendant.

*D. M. Lyons,* Assistant District Attorney, for the Commonwealth.

Rugg, C. J. The defendant is charged with having sold intoxicating liquor without license and contrary to law at Boston on February 12, 1920. The complaint is framed under R. L. c. 100, §§ 1 and 53, in two counts for two separate sales. The only evidence offered at the trial tended to show that the defendant on the date alleged made two distinct sales of whiskey, containing forty-seven per cent of alcohol by volume at sixty degrees Fahrenheit. The defendant offered no evidence. It is not contended that she was authorized to make the sales either by federal or State law. The single question raised on the record and argued at the bar is whether the statute of this Commonwealth prohibiting such sales without a license and providing penalty for the violation thereof is valid and enforceable since the adoption of the Eighteenth Amendment to the Constitution of the United States and the enactment of the national prohibition law.

The Eighteenth Amendment was proclaimed as having been ratified and thus become a part of the fundamental law of the land, on January 29, 1919. 40 U. S. Sts. at Large, 1941. Its first two sections, being the ones here pertinent, are in these words:

"Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Section 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation."

Congress, pursuant to the power conferred upon it by the second section of the Eighteenth Amendment "to enforce this article by appropriate legislation," has enacted the national pro-

hibition law, being Act of October 28, 1919, c. 85, Acts Sixty-sixth Congress, 41 U. S. Sts. at Large, 305, known as the Volstead act.

Confessedly both the Eighteenth Amendment and the Volstead act were in force and effect on the date named in the complaint and at the time of the sales involved in the case at bar.

By Title II, § 1 of the Volstead act it is provided that "The word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whiskey, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes," with exceptions not here material. By § 3 of the same title it is provided that "No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this Act, and all the provisions of this Act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." By § 29 the penalty for a sale of liquor in violation of Title II is for a first offence a fine of not more than $1,000 or imprisonment not exceeding six months, and for a second or subsequent offence a fine of not less than $200 nor more than $2,000 and imprisonment for not less than one month nor more than five years.

1. The construction given by the Supreme Court of the United States to the Eighteenth Amendment and to the Volstead act is binding upon this court. The only decision of that court throwing light upon the pending question is *National Prohibition Cases,* 253 U. S. 350, decided on the seventh of last June. Although one aspect of the Eighteenth Amendment was adjudged in *Hamilton* v. *Kentucky Distilleries & Warehouse Co.* 251 U. S. 146, 163, 164, it is not relevant to the contentions raised in the case at bar. It was held in substance in the first five conclusions of the opinion in *National Prohibition Cases,* concerning the Eighteenth Amendment, that (1) the resolution of Congress proposing it was sufficient in form, (2) it was lawfully proposed by Congress to the Legisla-

tures, (3) ratification thereof by the Legislature was not subject to referendum provisions of State constitutions and statutes, (4) its subject matter was within the power of amendment reserved in the Constitution, (5) it has become a part of the Constitution of the United States. The next four conclusions are in these words:

"6. The first section of the amendment — the one embodying the prohibition — is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers and individuals within those limits, and of its own force invalidates every legislative act, whether by Congress, by a State Legislature, or by a territorial assembly, which authorizes or sanctions what the section prohibits.

"7. The second section of the amendment — the one declaring 'The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation' — does not enable Congress or the several States to defeat or thwart the prohibition, but only to enforce it by appropriate means.

"8. The words 'concurrent power,' in that section, do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several States or any of them; nor do they mean that the power to enforce is divided between Congress and the several States along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.

"9. The power confided to Congress by that section, while not exclusive, is territorially coextensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several States or any of them."

By conclusion 10 the Volstead act is declared applicable indifferently to the disposal for beverage of liquors manufactured before and after the Eighteenth Amendment became effective, and by conclusion 11 the declaration of that act that liquors containing as much as one half of one per cent of alcohol by volume and fit for use for beverage shall be treated as intoxicating was held to be within the scope of the Eighteenth Amendment.

2. It thus is apparent that the words "concurrent power" as

used in the Eighteenth Amendment have not yet been authoritatively and explicitly defined with reference to circumstances like those disclosed in the case at bar. It becomes necessary for us to consider the meaning of those words so far as necessary to the present decision.

The word "concurrent," like most other words, has different meanings dependent upon the connection in which it occurs and the end to be accomplished by its use. It is a common word found in many different associations. There are numerous decisions in which the word has been defined or used in a specific sense. It was said in *Nielsen* v. *Oregon*, 212 U. S. 315, at page 319: "In *Wedding* v. *Meyler*, 192 U. S. 573, 584, construing the term 'concurrent jurisdiction' as given to Kentucky and Indiana over the Ohio River, this court . . . said, 'Concurrent jurisdiction, properly so called, on rivers is familiar to our legislation, and means the jurisdiction of two powers over one and the same place. There is no reason to give an unusual meaning to the phrase.'" *Nicoulin* v. *O'Brien*, 248 U. S. 113. The result of this kind of grant of power to two different States is that while one may legislate effectively over the entire river in the absence of conflicting statutes by another State having like power, it cannot punish one for doing within the territory of another State acts authorized by its laws. It seems to us obvious from the *National Prohibition Cases* that the concurrent power of the Eighteenth Amendment cannot be of this nature as to both Congress and the States. The decisions of State and inferior federal courts have been somewhat divergent concerning the meaning of the word "concurrent" in the same connection as before the court in *Nielsen* v. *Oregon*. Compare *State* v. *Moyers*, 155 Iowa, 678, *Roberts* v. *Fullerton*, 117 Wis. 222, *State* v. *Faudre*, 54 W. Va. 122, and decisions collected, *Nielsen* v. *Oregon, supra*.

There are several other instances where the word "concurrent" has been explained or defined in the judgments or opinions of justices of the Supreme Court of the United States. In *Fox* v. *Ohio*, 5 How. 410, at pages 418, 419, it is said respecting the powers of the general government and the States: "It very clearly appears . . . that there may be an exercise of concurrent jurisdiction in the case of a granted power; that the mere grant works no exclusion of State sovereignty, even where its con-

current exercise may lead to occasional interference in the policy of either government, and that nothing short of absolute and total repugnancy will suffice." In *Houston* v. *Moore,* 5 Wheat. 1, at page 49, Mr. Justice Story, after enumerating three classes of cases of exclusive powers vested in Congress, used this language: "In all other cases not falling within the classes already mentioned, it seems unquestionable that the States retain concurrent authority with Congress, not only upon the letter and spirit of the eleventh amendment of the Constitution, but upon the soundest principles of general reasoning. There is this reserve, however, that in cases of concurrent authority, where the laws of the States and of the Union are in direct and manifest collision on the same subject, those of the Union being 'the supreme law of the land' are of paramount authority, and the State laws, so far, and so far only, as such incompatibility exists, must necessarily yield." In the *Passenger Cases,* 7 How. 283, it was said by Mr. Justice M'Lean at page 396, "A concurrent power in the States to regulate commerce is an anomaly not found in the Constitution," and at page 399, "A concurrent power excludes the idea of a dependent power." In *Prigg* v. *Pennsylvania,* 16 Pet. 539, at page 622, the question was posited and answered "whether the power of legislation upon this subject [fugitive slaves] is exclusive in the national government, or concurrent in the States, until it is exercised by Congress. In our opinion it is exclusive." In *Gibbons* v. *Ogden,* 9 Wheat. 1, at page 209, it was said that the proposition could not be established that "the States possess, concurrently with the Legislature of the Union, the power to regulate commerce with foreign nations and among the States." In *Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204, it was said at page 209, "The adjudications of this court with respect to the power of the States over the general subject of commerce are divisible into three classes. First, those in which the power of the State is exclusive; second, those in which the States may act in the absence of legislation by Congress; third, those in which the action of Congress is exclusive and the States cannot interfere at all;" and at page 211, "Within the second class of cases—those of what may be termed concurrent jurisdiction — are embraced laws for the regulation of pilots: *Cooley* v. *Philadelphia Board of Wardens,* 12 How. 299;

*Steamship Company* v. *Joliffe*, 2 Wall. 450; *Ex parte McNiel*, 13 Wall. 236; *Wilson* v. *McNamee*, 102 U. S. 572; quarantine and inspection laws and the policing of harbors: *Gibbons* v. *Ogden*, 9 Wheat. 1, 203; *City of New York* v. *Miln*, 11 Pet. 102; *Turner* v. *Maryland*, 107 U. S. 38; *Morgan's Steamship Co.* v. *Louisiana*, 118 U. S. 455; the improvement of navigable channels: *County of Mobile* v. *Kimball*, 102 U. S. 691; *Escanaba Co.* v. *Chicago*, 107 U. S. 678; *Huse* v. *Glover*, 119 U. S. 543; the regulation of wharfs, piers, and docks: *Cannon* v. *New Orleans*, 20 Wall. 577; *Packet Company* v. *Keokuk*, 95 U. S. 80; *Packet Company* v. *St. Louis*, 100 U. S. 423; *Packet Company* v. *Catlettsburg*, 105 U. S. 559; *Transportation Company* v. *Parkersburg*, 107 U. S. 691; *Ouachita Packet Co.* v. *Aiken*, 121 U. S. 444; the construction of dams and bridges across the navigable waters of a State: *Willson* v. *Blackbird Creek Marsh Co.* 2 Pet. 245; *Cardwell* v. *American Bridge Co.* 113 U. S. 205; *Pound* v. *Turck*, 95 U. S. 459; and the establishment of ferries: *Conway* v. *Taylor's Executor*, 1 Black, 603.

"Of this class of cases it was said by Mr. Justice Curtis in *Cooley* v. *Board of Wardens*, 12 How. 299, 318: 'If it were admitted that the existence of this power in Congress, like the power of taxation, is compatible with the existence of a similar power in the States, then it would be in conformity with the contemporary exposition of the Constitution, (Federalist, No. 32,) and with the judicial construction, given from time to time by this court, after the most deliberate consideration, to hold that the mere grant of such a power to Congress, did not imply a prohibition on the States to exercise the same power; that it is not the mere existence of such a power, but its exercise by Congress, which may be incompatible with the exercise of the same power by the States, and that the States may legislate in the absence of congressional regulations.'"

We are unable to deduce from these decisions a universal definition of "concurrent," or one so well settled as to lead to the conviction that it was employed in the Eighteenth Amendment in reliance upon a judicially established meaning. Its meaning as used in that amendment must be determined from its context, the purpose to be accomplished and a consideration of authoritative adjudications where the discussion of kindred constitutional problems has been involved.

The Eighteenth Amendment was framed by Congress and by it submitted to the Legislatures of the several States. The debates of Congress concerning the amendment, to which resort might be had in appropriate instances, do not appear to us to throw light upon the meaning of the word "concurrent." We do not pause to review what there was said. See, however, remarks of the author of the Volstead act, 59 Congressional Record, March 23, 1920, pages 5146–5148.

This is the only instance to be found in the Constitution or any of its amendments where there is a definite declaration that both Congress and the several States have "concurrent power to enforce" any constitutional mandate or power "by appropriate legislation." Certain powers are reserved to the States. Article 1, § 8. Article 10 of the amendments. Certain powers are prohibited to the States and certain other powers can be exercised by the States only by consent of Congress. Article 1, § 10. But in the Eighteenth Amendment alone is there express establishment of the existence of concurrent power in Congress and the several States to enforce by legislation its provisions.

The words of the second section of the Eighteenth Amendment are specific to the point that "The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation." This phrase is significantly different from that found in corresponding sections of the thirteenth, fourteenth and fifteenth amendments. In those three instances Congress alone is given power "to enforce" "by appropriate legislation." Here the several States are joined with the Congress as depositories of concurrent legislative power. It is reasonable to presume that this change in phraseology was adopted understandingly and imports an intention to effect a change in substance and in scope of the power. *Slaughter-House Cases,* 16 Wall. 36, 74. It is hardly likely that in an instrument of such transcendent importance as an amendment to the Constitution, the conjoining of Congress and the separate States as severally possessors of legislative power for enforcement of prohibition should under any circumstances be a barren grant or confer merely an insubstantial shadow upon either. The difference between the phraseology of the Eighteenth Amendment and that of the thirteenth, fourteenth and fifteenth amendments in this particular, according to the common and ap-

proved usage of language, expresses a purpose to repose in the States a substantial power capable of some measure of effective exercise under all circumstances. The words of the amendment declare a complete possession of power by the States of which they cannot be deprived by Congress. The force and effect of the words of the Eighteenth Amendment, while possibly enlarging the permissible scope of State legislation respecting importation and exportation of intoxicating liquors, leaves open to State legislation the same field theretofore existing for the exercise of the police power concerning intoxicating liquors subject only to the limitations arising from the conferring of like power upon Congress with its accompanying implications, whatever they may be.

Having regard only to the words of the Eighteenth Amendment, the Congress and the several States are placed upon an equality as to legislative power. It is only when the amendment is placed in its context with other parts of the Constitution that the supremacy of the act of Congress if in direct conflict with State legislation becomes manifest.

There is a group of cases which hold that, while the general power to deal with some subjects is vested in Congress by the Constitution, yet in the absence of action by Congress, if the power is not denied to the States, legislation by them touching the subject is valid and enforceable. By art. 1, § 8 of the Constitution, Congress is given power "To establish . . . uniform laws on the subject of bankruptcies throughout the United States." There are no words in the Constitution as to the power of States over bankruptcies. Until Congress has acted by passing a general bankrupt law the several States may enact laws of that nature, which are suspended when Congress acts upon the subject. See, for example, *Sturges* v. *Crowninshield,* 4 Wheat. 122, 193; *Ogden* v. *Saunders,* 12 Wheat. 213; *Griswold* v. *Pratt,* 9 Met. 16. Those decisions rest on the principle that a uniform law on bankruptcies throughout the United States cannot readily coexist as operative legislation with various State laws covering the same field. That principle in our opinion is not applicable to the subject matter of the Eighteenth Amendment. There is no inherent or necessary incompatibility between the contemporaneous existence and enforcement of both federal and State

laws designed to enforce prohibition.  Therefore it is manifest to us that the explicit words of § 2 vesting "concurrent power" to enforce prohibition both in Congress and in the States mean something more than the "concurrent power" to which reference is made in *Sturges* v. *Crowninshield*, 4 Wheat. 122, 193, as existing without express words.

Congress is given power by art. 1, § 8 of the Constitution "to regulate Commerce with foreign Nations, and among the several States."  The first of these comprehends a power to enact a system of quarantine laws.  It has been held that State laws respecting quarantine "are valid until displaced or contravened by some legislation by Congress."  In the presence of such action "all State laws on the subject will be abrogated, at least so far as the two are inconsistent."  *Morgan's Steamship Co.* v. *Louisiana Board of Health*, 118 U. S. 455.  *Compagnie Française de Navigation à Vapeur* v. *Louisiana State Board of Health*, 186 U. S. 380. *Louisiana* v. *Texas*, 176 U. S. 1, 21.  State and national laws respecting pilots, *Olsen* v. *Smith*, 195 U. S. 332, 341, *Anderson* v. *Pacific Coast Steamship Co.* 225 U. S. 187, and bridges over navigable streams, *Gilman* v. *Philadelphia*, 3 Wall. 713, *Escanaba Co.* v. *Chicago*, 107 U. S. 678, *Cardwell* v. *American Bridge Co.* 113 U. S. 205, so long as not inconsistent with federal statutes, both are upheld, although of course when Congress speaks its power is paramount over conflicting statutes of the States.

There is a large group of decisions with respect to State laws affecting interstate commerce which have been upheld in the absence of conflict with some federal law.  See, for example, *Northern Pacific Railway* v. *Washington*, 222 U. S. 370, 377, 379; *Second Employers' Liability Cases*, 223 U. S. 1, 53–55; *Corbett* v. *Boston & Maine Railroad*, 219 Mass. 351.  Power of this nature in the States has been said in substance not to be "concurrent" with the power of Congress.  *Gibbons* v. *Ogden*, 9 Wheat. 1, 207–209. The words "concurrent power" in the Eighteenth Amendment cannot in our opinion rightly be held to confer only that kind of legislative power upon the States.

Cases of these classes are illustrative of the converse of the situation created by the Eighteenth Amendment.  In cases where Congress has the right of exclusive jurisdiction and puts forth its power to cover the field, then State legislation ceases to have

efficacy. That is because Congress has under the Constitution the power of exclusive dominion in the field. *Erie Railroad* v. *New York*, 233 U. S. 671. *St. Louis, Iron Mountain & Southern Railway* v. *Edwards*, 227 U. S. 265. *New York Central Railroad* v. *Winfield*, 244 U. S. 147.

Congress has not exclusive but only concurrent power over the subject of intoxicating liquor by the specific terms of the Eighteenth Amendment.

The prohibition or regulation of the manufacture and sale of intoxicating liquors previous to the ratification of the Eighteenth Amendment was within the exclusive jurisdiction of the States in the exercise of the police power, a power in general denied to the United States except as incidental to some other power conferred upon it by the Constitution, and reserved to the States by the Tenth Amendment. *Hamilton* v. *Kentucky Distilleries Co.* 251 U. S. 146, 156.

The scope and incidents of an express power of the general government are the same as those of an implied power. *Jacob Ruppert* v. *Caffey*, 251 U. S. 264, 267, 300. In determining the kind of concurrent power reserved to or conferred upon the several States by the Eighteenth Amendment when confessedly the word "concurrent" has been used with different meanings or to convey different conceptions, the considerations which have been adverted to seem to us entitled to weight.

In our opinion it would be unsound to hold that these categorical words of grant of concurrent power both to Congress and to the States to enforce the article by appropriate legislation confer no more upon the States than would be implied without these words.

Conclusions 8 and 9 of the opinion in *National Prohibition Cases, ubi supra*, by holding that the words "concurrent power" in the amendment do not mean joint power nor power divided between the Congress and the several States along the lines of division between foreign and interstate on the one side and intrastate commerce on the other, but that the power of Congress is "not exclusive" nor "affected by action . . . on the part of the several States or any of them," convey to us the plain intimation as an inevitable concomitant proposition that effective independent legislation remains a function of the States.

The words "concurrent power" occur in an amendment to a constitution. In framing such instruments words naturally are employed in a comprehensive sense as expressive of general ideas rather than of finer shades of thought or of narrow distinctions. The simple and dignified diction of a constitution does not readily lend itself to technical definition. There the terse statement of governmental principles in plain language may be looked for.

The amendment does not require that the exercise of the power by Congress and by the States shall be coterminous, coextensive and coincident. The power is concurrent, that is, it may be given different manifestations directed to the accomplishment of the same general purpose, provided they are not in immediate and hostile collision one with the other. In instances of such collision the State legislation must yield.

We are of opinion that the word "concurrent" in this connection means a power continuously existing for efficacious ends to be exerted in support of the main object of the amendment and making contribution to the same general aim according to the needs of the State even though Congress also has exerted the power reposed in it by the amendment by enacting enforcing legislation operative throughout the extent of its territory. Legislation by the States need not be identical with that of Congress. It cannot authorize that which is forbidden by Congress. But the States need not denounce every act committed within their boundaries which is included within the inhibition of the Volstead act, nor provide the same penalties therefor. It is conceivable also that a State may forbid under penalty acts not prohibited by the act of Congress. The concurrent power of the States may differ in means adopted provided it is directed to the enforcement of the amendment. Legislation by the several States appropriately designed to enforce the absolute prohibition declared by the Eighteenth Amendment is not void nor inoperative simply because Congress in performance of the duty cast upon it by that amendment has defined and prohibited beverages and has established regulations and penalties concerning them. State statutes, rationally adapted to putting into execution the inexorable mandate against the sale of intoxicating liquors for beverage contained in § 1 of the amendment by different definitions, regulations and penalties from those contained in the Volstead act and not in

conflict with the terms of the Volstead act but in harmony there-
with, are valid. Existing laws of that character are not suspended
or superseded by the act of Congress. The fact that Congress
has enacted legislation covering in general the field of national
prohibition does not exclude the operation of appropriate State
legislation directed to the enforcement by different means of
prohibition within the territory of the State.

The power thus reserved to the States must be put forth in aid
of the enforcement and not for the obstruction of the dominant
purpose of the amendment. It must not be in direct conflict with
the act of Congress in the same field. Subject to these limitations
growing out of the nature of our dual system of government, the
power of the States is constant, vital, effective and susceptible of
continuous exercise. We think that these results follow from the
words of the amendment, from the implications of conclusions
8 and 9 of the opinion in *National Prohibition Cases,* and from the
other decisions to which reference has been made.

3. If, however, we are wrong in this interpretation of the words
"concurrent power" in the amendment, the same general result
in its effect on the case at bar seems to us to follow from numerous
decisions of the Supreme Court of the United States respecting
State legislation concerning other subjects within the paramount
power of Congress under the Constitution, decisions which appear
to us also to fortify the conclusion· we have reached as to the
meaning of the words "concurrent power" in the Eighteenth
Amendment. The concurrent power of the States to enact legis-
lation as to matters about which Congress has acted is given in
these decisions a still different meaning from that attributed to
it in cases like *Sturges* v. *Crowninshield,* 4 Wheat. 122, or at least
is afforded a wider scope for effective operation.

The general principle as to the right of the States to exercise
the power of effective legislation concerning subjects over which
Congress also has power was stated in these words (summarizing
language of Mr. Justice Story in *Houston* v. *Moore,* 5 Wheat. 1,
at page 49) in *Gilman* v. *Philadelphia,* 3 Wall. 713, at page 730:
"The States may exercise concurrent or independent power in all
cases but three: 1. Where the power is lodged exclusively in the
Federal Constitution. 2. Where it is given to the United States
and prohibited to the States. 3. Where, from the nature and

subjects of the power, it must necessarily be exercised by the National Government." Illustrations of the scope and application of those principles are found in numerous decisions, where they are amplified and made even more clear in the judgments rendered. In *Fox* v. *Ohio*, 5 How. 410, the plaintiff in error was indicted for "passing and uttering" counterfeit coin contrary to a statute of Ohio. The United States Constitution by art. 1, § 8, confers upon Congress power to punish counterfeiting. In holding valid the conviction under the State statute, it was said at pages 434, 435: "It has been objected on behalf of the plaintiff in error, that if the States could inflict penalties for the offence of passing base coin, and the federal government should denounce a penalty against the same act, an individual under these separate jurisdictions might be liable to be twice punished for the one and the same crime, and that this would be in violation of the fifth article of the amendments to the Constitution, declaring that no person shall be subject for the same offence to be twice put in jeopardy of life or limb. Conceding for the present that Congress should undertake, and could rightfully undertake, to punish a cheat perpetrated between citizens of a State because an instrument in effecting that cheat was a counterfeited coin of the United States, the force of the objection sought to be deduced from the position assumed is not perceived; for the position is itself without real foundation. The prohibition alluded to as contained in the amendments to the Constitution, as well as others with which it is associated in those articles, were not designed as limits upon the State governments, in reference to their own citizens. They are exclusively restrictions upon federal power, intended to prevent interference with the rights of the States, and of their citizens. . . . It is almost certain, that, in the benignant spirit in which the institutions both of the State and federal systems are administered, an offender, who should have suffered the penalties denounced by the one, would not be subjected a second time to punishment by the other, for acts essentially the same, unless indeed this might occur in instances of peculiar enormity, or where the public safety demanded extraordinary rigor. But were a contrary course of policy and action either probable or usual, this would by no means justify the conclusion, that offences falling within the competency of different authorities to restrain

or punish them would not properly be subjected to the consequences which those authorities might ordain and affix to their perpetration." In *Ex parte Siebold*, 100 U. S. 371, the question arose as to the effect of the exercise by Congress of its power over the election of members of Congress upon State laws inflicting punishment for the same wrongful acts inhibited by the act of Congress. It was stated at page 390 *et sequentia* that Mr. Justice Daniel in "delivering the opinion of the court in the case of *United States* v. *Marigold* (9 How. 569), where a conviction was had under an act of Congress for bringing counterfeit coin into the country, said, in reference to *Fox's Case:* 'With the view of avoiding conflict between the State and Federal jurisdictions, this court, in the case of *Fox* v. *State of Ohio*, have taken care to point out that the same act might, as to its character and tendencies, and the consequences it involved, constitute an offence against both the State and Federal governments, and might draw to its commission the penalties denounced by either, as appropriate to its character in reference to each. We hold this distinction sound;' and the conviction was sustained. The subject came up again for discussion in the case of *Moore* v. *State of Illinois* (14 id. 13), in which the plaintiff in error had been convicted under a State law for harboring and secreting a negro slave, which was contended to be properly an offence against the United States under the fugitive-slave law of 1793, and not an offence against the State. The objection of double punishment was again raised. Mr. Justice Grier, for the court, said: 'Every citizen of the United States is also a citizen of a State or Territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both.' Substantially the same views are expressed in *United States* v. *Cruikshank* (92 U. S. 542), referring to these cases; and we do not well see how the doctrine they contain can be controverted. A variety of instances may be readily suggested, in which it would be necessary or proper to apply it. Suppose, for example, a State judge having power under the naturalization laws to admit to citizenship should utter false certificates of naturalization, can it be doubted that he could be indicted under the act of Congress providing penalties for that offence, even

though he might also, under the State laws, be indictable for forgery as well as liable to impeachment? · So, if Congress, as it might, should pass a law fixing the standard of weights and measures, and imposing a penalty for sealing false weights and false measures, but leaving to the States the matter of inspecting and sealing those used by the people, would not an offender, filling the office of sealer under a State law, be amenable to the United States as well as to the State? If the officers of election, in elections for representatives, owe a duty to the United States, and are amenable to that government as well as to the State, — as we think they are, — then, according to the cases just cited, there is no reason why each should not establish sanctions for the performance of the duty owed to itself, though referring to the same act." In *United States* v. *Amy,* 24 Fed. Cas. 792 (quoted in a note in 14 Md. 149), in the course of an opinion by Chief Justice Taney respecting an indictment under a law of the United States for stealing letters of value from the post office, it was said (810, 811): "In maintaining the power of the United States to pass this law, it is, however, proper to say that, as these letters, with the money in them, were stolen in Virginia, the party might undoubtedly have been punished in the State tribunals, according to the laws of the State, without any reference to the post office or the act of Congress; because, from the nature of our government, the same act may be an offence against the laws of the United States and also of a State, and be punishable in both. This was considered and decided in the Supreme Court of the United States in the case of *Fox* v. *Ohio,* 5 How. 433, and in the case of *United States* v. *Marigold,* 9 How. 560; and the punishment in one sovereignty is no bar to his punishment in the other." *Cross* v. *North Carolina,* 132 U. S. 131, 139. *Commonwealth* v. *Barry,* 116 Mass. 1. In *Reid* v. *Colorado,* 187 U. S. 137, a State inspection law was upheld applicable to live stock coming into one State from another and thus directly affecting and impeding interstate commerce, even when the same stock was subject to inspection under an act of Congress and had been inspected in accordance therewith. It was said at page 148: "It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the States, even when it may do so, unless its purpose to effect that result is clearly

manifested. This court has said — and the principle has been often reaffirmed — that 'in the application of this principle of supremacy of an act of Congress in a case where the State law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together.' *Sinnot* v. *Davenport,* 22 How. 227, 243." To the same general effect are *Asbell* v. *Kansas,* 209 U. S. 251, 257, *Commonwealth* v. *Moore,* 214 Mass. 19, *Ex parte Guerra,* 94 Vt. 1, *State* v. *Hosmer,* 144 Minn. 342. See *Southern Railway* v. *Indiana Railroad Commission,* 236 U. S. 439, 445, 446; *State* v. *Tachin,* 92 N. J. L. 269.

The facts in *Sexton* v. *California,* 189 U. S. 319, were these: Extortion for falsely threatening to accuse one of selling cigars in old boxes was made a crime by federal statute. The plaintiff in error was convicted of extortion under a statute of California upon evidence showing commission of the federal offence. It was held that the conviction must stand as good under U. S. Rev. Sts. § 5328 (now Federal Penal Code Act of March 4, 1909, c. 321, § 326, 35 U. S. Sts. at Large, 1151). "Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." It was said at page 324: "The section (5328) was not intended to merely permit a State court to punish a different offence involved in the one act. It was intended to leave with the State court, unimpaired, the same jurisdiction over the act that it would have had if Congress had not passed an act on the subject." *Crossley* v. *California,* 168 U. S. 640, 641.

It appears to us that the express mandate of the fundamental law conferring "concurrent power" upon the States, as well as upon Congress, to legislate concerning the prohibition of the sale of intoxicating liquors, must have at least as much potency as a simple act of Congress such as was construed in *Sexton* v. *California.*

The words of § 3, Title II of the Volstead act, to the effect that "All the provisions of this Act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented," would seem to indicate a purpose not to nullify State laws operating to that end unless imperatively necessary from independent considerations. The Volstead act manifests no in-

tent on the part of Congress to supersede or suspend State statutes not directly repugnant thereto on the same subject. Even if under the Eighteenth Amendment Congress has the clear power to do so, its enactment would not be given that effect except in instances where its design to accomplish that result is plain and the repugnance between the federal and the State statute is absolute, positive and irreconcilable so that both cannot stand together. *Missouri, Kansas & Texas Railway* v. *Harris,* 234 U. S. 412, 419. *Illinois Central Railroad* v. *State Public Utilities Commission of Illinois,* 245 U. S. 493, 510.

In *Railroad Co.* v. *Fuller,* 17 Wall. 560, at page 568 (quoting from *Ex parte McNiel,* 13 Wall. 236, 240), occurs this statement: " In the complex system of polity which exists in this country the powers of government may be divided into four classes:

"Those which belong exclusively to the States.

"Those which belong exclusively to the National Government.

"Those which may be exercised concurrently and independently by both.

"And those which may be exercised by the States but only until Congress shall see fit to act upon the subject. The authority of the State then retires and lies in abeyance until the occasion for its exercise shall recur."

There is here express recognition of a field of legislation, apart from definite constitutional mandate such as is in the Eighteenth Amendment, over which jurisdiction may be exercised both by Congress and by the States "concurrently and independently."

In our opinion the irresistible conclusion from these decisions is that State legislation which in its practical operation is appropriate to enforce the chief aim of the Eighteenth Amendment and to make it more completely operative in all its amplitude is not suspended, superseded, set aside nor rendered inapplicable in its denouncements by the Volstead act, in so far as not incompatible therewith or in contravention of its provisions.

4. It remains to examine the present force and effect of the statutes of this Commonwealth, under which the complaint against the defendant was framed, in the face of the Eighteenth Amendment and the Volstead act. Previous to the adoption of the Eighteenth Amendment and the war prohibition act, the entire subject of intoxicating liquors, including total or partial

prohibition of the manufacture, transportation and sale and the regulation thereof, apart from interstate commerce, was vested in this Commonwealth as a part of its police power. *Mugler* v. *Kansas,* 123 U. S. 623. *In re Rahrer, petitioner,* 140 U. S. 545. *South Carolina* v. *United States,* 199 U. S. 437, 453. The General Court in the exercise of that power enacted R. L. c. 100. Its title is "Of Intoxicating Liquors." The broad scope of that chapter is ·expressed in § 1 in these words: "No person shall sell, or expose or keep for sale, spirituous or intoxicating liquor, except as authorized in this chapter. . . ." There are ninety sections in the chapter, wherein intoxicating liquors are defined and provision made in considerable detail for an annual vote in each of the several cities and towns upon the question whether during the year licenses shall be granted therein for the sale of intoxicating liquor, for the establishment of licensing boards in such municipalities as vote yes upon that question, for the granting. therein of several classes of licenses, the fees and conditions of licenses, the authority thereby conferred, the regulation and inspection of licensed places, for licenses to dealers in paints and chemicals and to druggists and apothecaries, for the punishment of violations of the statute and for the recovery of certain kinds of civil damages arising from designated uses, abuses and sales of intoxicating liquor.

It is plain that since the enactment of the Eighteenth Amendment the provisions of this chapter, so far as they authorize under any circumstances whatsoever sales of intoxicating liquor for beverage, are inoperative. *National Prohibition Cases,* 253 U. S. 350. Many sections of the chapter now are not enforceable because repugnant to the provisions of the Eighteenth Amendment. It was all operative and valid and strictly within the constitutional power of the Legislature when enacted. The point now is to ascertain whether the parts under which the present complaint is brought still remain valid and enforceable.

This point is not the same which would arise where a whole statute has been enacted, some parts of which are beyond legislative power under then existing constitutional provisions. In such cases one part of the statute may be valid and enforceable and another part obnoxious to some constitutional inhibition, subject to "this limitation, that the parts, so held respectively

constitutional and unconstitutional, must be wholly independent of each other. But if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant a belief that the Legislature intended them as a whole, and that, if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them." *Warren* v. *Mayor & Aldermen of Charlestown,* 2 Gray, 84, 99. These words of Chief Justice Shaw often have been quoted with approval by the Supreme Court of the United States. *International Text Book Co.* v. *Pigg,* 217 U. S. 91, 113. The facts stated as the basis of that principle are not the facts here presented. The intent of the Legislature is not germane to the present inquiry. Its intent existed at the time of the enactment of the statute. Its expression of intent then indubitably was valid throughout. The statute was altogether impregnable in its constitutional aspects. The precise question is, how much of a statute perfectly valid throughout at the time of its enactment remains enforceable now that since its enactment a superior power has supervened with a fundamental governing law at variance with some of its terms.

Section 2 of c. 100 defined intoxicating liquor in these words: "Ale, porter, strong beer, lager beer, cider, all wines, any beverage which contains more than one per cent of alcohol, by volume, at sixty degrees Fahrenheit, and distilled spirits, shall be deemed to be intoxicating liquor within the meaning of this chapter." By § 53 the penalty for making a sale of intoxicating liquor in violation of the chapter is "a fine of not less than fifty nor more than five hundred dollars, and by imprisonment for not less than one nor more than six months," although both fine and imprisonment need not be imposed if the defendant satisfies the court that he has not before been convicted of a similar offence. R. L. c. 220, § 10. Thus the provisions of c. 100 differ from those of the Volstead act in respect of the definition of intoxicating liquor and the penalties provided for sales in violation of their terms. These provisions of R. L. c. 100, however, tend toward the enforcement of the main end of the Eighteenth Amendment of prohibiting the sale of intoxicating liquors for beverage purposes. They are not

repugnant to the provisions of the Volstead act in the sense that they are mutually antagonistic and incapable of being concurrently enforced. Of course the implied authority conferred by §§ 1 and 2 of R. L. c. 100, to sell liquor containing alcohol in excess of one half of one per cent and less than one per cent inferable from the failure to prohibit such sales is no longer operative in view of the Volstead act. Such sales cannot now be made lawfully. If made they constitute a crime under the Volstead act, but not a crime under the law of the Commonwealth. But aside from that, other provisions of c. 100 aimed at the suppression of sales of liquor containing more than one per cent of alcohol have a tendency to enforce prohibition of the use of such liquor for beverage purposes. They will be enforced by judicial tribunals of a different sovereignty. They tend toward the same result by harmonious means. The definitions in R. L. c. 100, § 2, and in Title II, § 1 of the Volstead act, are alike in including by name "ale" and "porter;" that of the former is "strong beer, lager beer, cider, all wines" and of the latter "beer, ale, porter, and wine." The words "alcohol, brandy, whiskey, rum, gin, beer, ale, porter, and wine, and . . . any spirituous . . . liquor" of the Volstead act are included within the more compendious phrase "distilled spirits" of R. L. c. 100, § 2. These differences manifest no conflict nor antagonism between the two statutes. There is small practical difference between them. As we construe these provisions of the State statute, they do not authorize that which the Volstead act forbids. They simply fail to punish some conduct which the Volstead act denounces. The definition of intoxicating liquor contained in R. L. c. 100, § 2, is not unreasonable. It does not facilitate the use of intoxicating liquor as a beverage but on the contrary tends to repress such use. It cannot be said as matter of law to include liquor in fact intoxicating. See in this connection *Jacob Ruppert* v. *Caffey*, 251 U. S. 264, 282 to 298 and notes. The words of R. L. c. 100, § 2, express the policy of the Commonwealth as declared by the General Court. They establish the policy of the Commonwealth respecting the enforcement of the Eighteenth Amendment through its executive, administrative and judicial departments. They provide rational and effective means toward the enforcement of the chief aim of the Eighteenth Amendment. They are not obstructive of the

Volstead act. They are operative in our opinion under any of the views of "concurrent power" hereinbefore set forth.

There are other provisions of the chapter which are susceptible of being operative notwithstanding general and national prohibition. The rules as to evidence, §§ 64, 65, the provisions for search warrants for contraband liquors, §§ 72–79, 81–85, arrest without warrant, § 86, declaring common nuisances intoxicating liquors kept for sale contrary to law and implements and vessels actually used in selling and keeping the same, § 87, and declaring club houses used for selling, distributing or dispensing intoxicating liquor to be common nuisances, § 88, as to burden of proof, R. L. c. 219, § 7, all are efficacious means for the enforcement of the mandate of the Eighteenth Amendment. Other sections of R. L. c. 100, and other statutes passed since the Revised Laws of the same general nature may still be in force, to which it is not necessary to refer in detail.

The general purpose of R. L. c. 100, is prohibition, except as local option manifested by annual votes in the several municipalities effectuated by the granting of licenses through municipal boards may result in a regulated method of sales by licensees. The burden of proving such authorization rests upon a defendant, however. Upon a complaint for an illegal sale the Commonwealth makes out its case by showing a sale of intoxicating liquor. The defendant, in order to escape conviction, must prove his license. R. L. c. 219, § 7. *Commonwealth* v. *Regan*, 182 Mass. 22, 25. As matter of statutory construction, the prohibition is general, the license is exceptional. The latter is dependent upon the efficacy of a valid local vote and a genuine license. This being the purpose and plan of the statute, its prohibitory features are not so dependent upon those respecting license as to be swept away when those as to license are stricken down by the Eighteenth Amendment. The general rule of the statute continues to prevail even though the law has so changed that the special defence can no longer be made out.

It follows that R. L. c. 100, has not been abrogated by the Eighteenth Amendment and the Volstead act. The sections under which the complaint was framed against the defendant are still operative and efficacious.

5. The circumstance that R. L. c. 100, was enacted prior to the

adoption of the Eighteenth Amendment does not prevent it from being "appropriate legislation" to enforce that amendment. The words "appropriate legislation" in that amendment do not of necessity require future and exclude existing legislation. A State law already enacted is within the purview of the words "appropriate legislation" as used in the Eighteenth Amendment. If existing legislation is adapted to the end in view, it is enforceable.

As has already been pointed out, the subject of the regulation or prohibition of traffic in intoxicating liquors, apart from interstate or foreign commerce in them, was within the police power of the several States until the adoption of the Eighteenth Amendment. *Mugler* v. *Kansas,* 123 U. S. 623. That amendment conferred no new power upon the States, so far as concerns the provisions of R. L. c. 100. It recognizes and continues and to a certain extent limits pre-existing power. It confers new power upon the federal government. It does not expressly abrogate existing State legislation rationally adapted to the enforcement of the amendment. If that had been the purpose of its framers, expression thereof would have been simple and natural. Omission of words indicative of that purpose are significant that it did not exist.

The principle was declared in *In re Rahrer, petitioner,* 140 U. S. 545, 564, 565, that a State statute, invalid at the time of its enactment for the reason that it infringed upon the federal power and was unconstitutional, was rendered valid and enforceable without re-enactment simply by the subsequent passage of an act of Congress removing an impediment to the enforcement of the State law and thus conferring jurisdiction in that particular upon the States. That principle seems to us equally applicable to the situation presented in the case at bar. The force of that decision would uphold R. L. c. 100, to the extent to which we have decided it to be in effect, even if the power conferred upon the State by the Eighteenth Amendment had been a grant of new power.

Whichever may be the true view of the effect of the Eighteenth Amendment in this particular, we are of opinion that R. L. c. 100 is in the sections affecting the case at bar valid and enforceable. *Commonwealth* v. *Calhane,* 154 Mass. 115. *Lawton Spinning Co.*

.v. *Commonwealth,* 232 Mass. 28, 35, 36.  *Ward* v. *Proctor,* 7 Met.
318.   *Lothrop* v. *Highland Foundry Co.* 128 Mass. 120.   *Tua* v.
*Carriere,* 117 U. S. 201, 209.   *Central Pacific Railroad* v. *Nevada,*
162 U. S. 512, 523, 524.

6. If, however, we are in error in holding that the definition of
intoxicating liquor in R. L. c. 100, § 2, is still valid to the extent
that, aside from liquors specifically named as intoxicating, only
"any beverage which contains more than one per cent of alcohol
. . . shall be deemed to be intoxicating liquor," as the basis for
prosecution under the laws of this Commonwealth; and if the
only permissible definition in that particular is that established
in the Volstead act, Title II, § 1, namely, aside from specified
liquors, "any spirituous, vinous, malt, or fermented liquor,
liquids, and compounds . . . containing one-half of 1 per centum
or more of alcohol," we are of opinion that the present complaint
is well founded.  We assume that the definition of intoxicating
liquors contained in the Volstead act cannot be imported into
our statute without legislative action.  The offence set forth in
the complaint, namely, selling intoxicating liquor, is an offence
under the sections of c. 100 still remaining enforceable, upon the
hypothesis that § 2 has been rendered null and void or at least
unenforceable except so far as exactly coextensive with Title II,·
§ 1 of the Volstead act.  The only evidence in the case at·bar
tended to show sales by the defendant of whiskey for beverage
purposes.  Whiskey is as clearly within the definition of intoxicat-
ing liquor in R. L. c. 100, § 2, as in Title II, § 1 of the Volstead
act.  It is specified in each.  The sale of it under the circum-
stances here disclosed is as much a crime under the one statute
as under the other.  For the reasons already stated, § 1 of c. 100
is not annulled even if § 2 be determined to be no longer valid.
The complaint charges a sale of intoxicating liquor contrary to
law.  We are of opinion that the complaint is not defective even
if it be assumed that that part of the definition of intoxicating
liquor ·in R. L. c. 100, § 2, which fixes more than one per cent of
alcohol as the test in the absence of any other, is no longer opera-
tive and is suspended by provisions of the Volstead act.

Even if every part of the definition of intoxicating liquor con-
tained in said § 2 were no longer in force, then the thing forbidden
by. c. 100 is sale of intoxicating liquor, without a .statutory defi-

nition of what such liquor is. The term "intoxicating liquor" nevertheless is definable. In the trial of such a complaint the question under this hypothesis would be an "issuable fact whether or not a particular liquor . . . sold as a beverage is intoxicating." *Jacob Ruppert* v. *Caffey,* 251 U. S. 264, 282. *United States* v. *Standard Brewery Co.* 251 U. S. 218. The evidence was that liquor sold by the defendant was whiskey. As matter of common knowledge that is intoxicating liquor. *Commonwealth* v. *Morgan,* 149 Mass. 314, 316. *Commonwealth* v. *Grey,* 2 Gray, 501. *Commonwealth* v. *Herrick,* 6 Cush. 465, 468. No question is raised on this record as to that point nor as to the correctness of the instructions given. If the evidence had required, the defendant would have been entitled to an instruction to the effect that if the liquor sold contained one half of one per cent of alcohol or more, but less than one per cent of alcohol, a verdict of not guilty must be returned. If those had been found to be the facts there would have been no offence under our statute. But no such contention has been presented on this record.

The court are unanimous in what is said under paragraphs numbered 1, 2 and 3 of this opinion. What is said under paragraphs numbered 4, 5 and 6 is concurred in by a majority of the court.

The conclusions which we have reached summarily stated are these:

A. The words "concurrent power" as used in the Eighteenth Amendment have not yet been defined by the Supreme Court of the United States with reference to facts such as are here presented.

B. By the words of the Eighteenth Amendment that "The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation," this Commonwealth possesses continuous and independent power to enact legislation actually tending to render efficient, through its executive and judicial departments, the terms of that amendment. Such legislation, in definitions, administrative agencies and penalties, may differ from but cannot be antagonistic to the act of Congress.

C. If, however, the words "concurrent power" do not preserve and recognize such ample legislative jurisdiction in the

States, they are broad enough in scope to authorize the enactment by the States of statutes, whose plain purpose and natural effect is the enforcement of the chief end of the Eighteenth Amendment and not repugnant to nor inconsistent with acts of Congress.

D. The provisions of R. L. c. 100, concerning the prohibitions of sales of intoxicating liquors, the definition of intoxicating liquor, and the penalties for the violations of these and similar provisions and the means of enforcing them, constitute a valid exercise of the legislative power of the Commonwealth under both propositions B and C just stated.

E. Those provisions of R. L. c. 100, set forth in proposition D, were not abrogated nor annulled by the Eighteenth Amendment, but are in force under the terms of that amendment although it was adopted subsequent to the enactment of R. L. c. 100.

F. Even if the definition of intoxicating liquors given in R. L. c. 100, § 2, in so far as it fails to define as intoxicating that liquor which contains one half of one per centum of alcohol or more up to and including one per cent of alcohol, no longer has validity since the enactment of the Volstead act, the present complaint is well founded under the remaining enforceable provisions of R. L. c. 100.

It follows that no error is disclosed on this record. The motions to quash and to dismiss for want of jurisdiction, and the plea in bar, all were overruled rightly. The refusal to grant the defendant's requests for rulings was proper. The denial of the motion in arrest of judgment was correct. In accordance with the terms of the report the entry must be

*Verdict to stand.*