# CRIMINAL CASES.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### ALLEN V. COMMONWEALTH.

#### January 20, 1921.

1. INTOXICATING LIQUORS.—*Constitutional Law—Whether State Law Nullified by Volstead Act.*—Congress, by the enactment of the Volstead act, in pursuance of the power conferred upon it by the eighteenth amendment, did not take possession of the entire field of prohibition legislation, State as well as Federal, so as to nullify the existing State law on the subject.

2. INTOXICATING LIQUORS.—*Effect of Eighteenth Amendment—Offenses Against the United States.*—The eighteenth amendment merely created into offenses against the United States conduct consisting in "the manufacture, sale or transportation of intoxicating liquors within" the respective States "for beverage purposes;" whereas, prior to the going into effect of such amendment only the respective States could by State legislation create such conduct into offenses, and then only into offenses against the State. As the Federal Constitution stood prior to the eighteenth amendment, neither by State statute nor by act of Congress could such conduct be created into Federal offenses.

3. CONSTITUTIONAL LAW.—*Criminal Law—Conflict Between State and Federal Laws—Offenses Against State and the United States.*—The same conduct may constitute an offense against the United States and also a distinct offense against the State, and the accused may be punished for both crimes, each sovereignty punishing him for the crime committed against it.

4. INTOXICATING LIQUORS.—*Eighteenth Amendment—Volstead Act—State Statutes.*—Any statute which the State may have enacted or may enact creating or not creating State offenses with reference to intoxicating liquors would not be in conflict with the Volstead act, or with the eighteenth amendment, unless and only to the extent that such State statute should attempt to nullify the Federal law creating the Federal offenses aforesaid. The State law could not authorize the commission of the offenses condemned by the Federal law, so as to permit the offender to go free of punishment under the Federal law. It can, however, impose or withhold punishment for such con-.

duct as State offenses, or impose different punishments for State offenses consisting of the same conduct.

Error to a judgment of the Corporation Court of the city of Newport News.

*Affirmed.*

The indictment in this case was found on January 14, 1920, and charged that the accused "within one year next prior to the finding of this indictment, in the * * * city of Newport News, did unlawfully manufacture, sell, offer, keep, store and expose for sale, transport, dispense, solicit, advertise, receive orders for and aid others in procuring ardent spirits against the peace and dignity of the Commonwealth of Virginia."

The accused, on March 27, 1920, demurred to the indictment. The demurrer was overruled. Whereupon, the accused pleaded guilty, the plea being tendered in person and with the consent of the attorney of the Commonwealth, and was entered of record; and thereupon the court below proceeded to hear and determine the case without the intervention of a jury; and the evidence and argument of counsel having been fully heard, the said court found the accused guilty, as charged in the indictment, and ascertained and fixed his punishment to be imprisonment in the jail of said city for the term of three months and assessed a fine against him of three hundred dollars, and entered judgment accordingly.

Neither the evidence nor the facts proved on the trial appear from the record.

The assignments of error before us are as follows:

"First.—The indictment was bad on demurrer. There is no valid statute in Virginia regulating the sale, possession of, etc., of intoxicating liquor. ' When Congress passed the Volstead act which became effective January 16, 1920,

co-etmporaneously with the eighteenth amendment, the Mapp act and all State statutes regulating intoxicating liquors became void.

Second.—The court was without jurisdiction to enforce a Federal statute.

"Third.—If it be conceded that the several States have 'concurrent power by appropriate legislation' to enforce the eighteenth amendment, Virginia has not, through the General Assembly, undertaken to do so.

"Fourth.—The Mapp act conflicts with the Volstead act, and the laws of the States must yield to the acts of Congress passed in execution of the power conferred upon it by the Federal Constitution.

"Fifth.—The eighteenth amendment went into effect on the 16th day of February, 1920. It was proposed to put petitioner on trial March 27, 1920, at which time the Federal law had rendered of no force and effect the State law."

The position taken for the accused on the subject of the first, fourth and fifth assignments of error is thus summarized and stated in the petition for the writ of error in this case:

"There is in these matters no such thing as a divided sovereignty. Jurisdiction is vested entirely in either the State or the nation and is not divided between the two"—quoting from the opinion of the Supreme Court in *Re Heff*, 197 U. S. 505, 25 Sup. Ct. 511, 49 L. Ed. 855.

This position is further elaborated in the petition and other Supreme Court decisions are cited and relied on as follows:

"The State legislation must not create independent duties, but must conform to the Federal law. As was said in *Re Heff*, 'If, by national law, a sale to or by an Indian was punished solely by imprisonment, and by State law solely by fine, how could both laws be enforced in respect to the same sale?'

"Upon examination of the Volstead act it is found that a sale may be punished by fine alone, or by imprisonment, or both. The Mapp act makes it obligatory that both fine and imprisonment be imposed. Under the Mapp act one may have his quart a month, the Volstead act denies this so-called privilege. The many inequalities go to show that the Mapp act can no longer be the law. One may keep within the Mapp act and run counter to the Volstead act, or observing the Volstead act, bring on himself the condemnation of the State law.

"It is perceived that there can be no State and Federal law, only when the laws occupy different planes. The police power, by the eighteenth amendment, for the regulation of intoxicating liquors, the several States have now vested in the Federal government wholly, and thereby have wholly divested themselves of the power. The Federal government thus occupying the whole field to the exclusion of the States.

"But it is said, by the provisions of the amendment, the several States have with Congress 'concurrent power by appropriate legislation' to enforce the amendment.

"It was in contemplation of those who framed the amendment that while it might be adopted by three-fourths of the States, that a Congress might be reluctant to pass legislation to enforce it, should this happen then the several States were empowered to pass enforcement statutes.

"But Congress has acted. It was the first to exercise 'concurrent power' and having acted occupies the whole field. This act applies uniformly to the whole country.

"There was a time when the States might pass laws affecting interstate commerce. This was when the United States having the right under the commerce clause had not legislated. It had the power but had not spoken.

"In the case of *Southern Ry. Co.* v. *Reid*, 222 U. S. p. 436, 32 Sup. Ct. 142, 56 L. Ed., p. 260, Mr. Justice McKenna said:

" 'It is well settled that if the State and Congress have a concurrent power, that of the State is superseded when the power of Congress is exercised.'

"When Congress acts with reference to a matter confided to it by the Constitution of the United States, then the Federal statute displaces all conflicting local legislation touching that matter. *Lake Shore, etc., R. Co.* v. *Ohio,* 173 U. S., p. 297, 19 Sup. Ct. 465, 43 L. Ed., p. 702.

"Even though an act of Congress does not go into effect until a certain time following its passage, State legislation is immediately superseded upon the Federal statute becoming effective. *Northern Pac. R. R. Co.* v. *Washington,* 222 U. S. p. 370, 32 Sup. Ct. 160, 56 L. Ed., p. 237.

"There can be in reality no such thing as concurrent power to perform an act, certainly in two sovereignties. We have many instances of what is termed concurrent jurisdiction, yet it is a well established principle of law that the court first obtaining jurisdiction of the person or subject matter will retain this jurisdiction to the exclusion of another court having in the first instance a concurrent jurisdiction.

"A concurrent power in two distinct sovereignties to regulate the same thing is inconsistent, as it is impracticable in action. It involves a moral and physical impossibility. A joint action is not supposed, and two independent wills cannot do the same thing. The action of one must necessarily precede the action of the other, and that which is first, being competent, must establish the rule. If the power be equal, as must be the case, both being sovereign, one may undo what the other does, and this must be the result of their action. *Smith* v. *Turner,* 7 How., p. 396, 12 L. Ed. p. 702."

*Allen D. Jones,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., As-*

*sistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions sought to be raised by the second and third assignments of error are not presented by the record in this case. The law which the record discloses as enforced by the judgment under review was the State law, enacted, in the exercise of the police power of the State, prior to the going into effect of the eighteenth amendment to the Federal Constitution and prior to the enactment by the Congress of the Volstead act (41 Stat. 305).

[1] The question presented for our decision by the remaining assignments of error, based upon the record before us, is the following:

1. Did the Congress, by the enactment of the Volstead act, in pursuance of the power conferred upon it by the eighteenth amendment, take possession of the entire field of prohibition legislation, State as well as Federal, so as to nullify the existing State law on the subject?

This question must be answered in the negative.

The Supreme Court decisions relied upon for the accused concerning the supremacy of the Federal power have reference to subjects concerning which the power of legislation has been, expressly or by necessary implication, granted to the Federal government by the United States Constitution, so as to lodge such power in the Federal government exclusively when it has taken possession of the field of legislation.

There are other subjects concerning which, as a well established principle, it has long been well settled that the States may exercise independent legislative power. In the case of *Commonwealth* v. *Nickerson* (Mass.), 128 N. E. 273, involving precisely the same question as we have now

before us, this is said by the Supreme Court of Massachu-
setts:

"The general principle as to the right of the States to
exercise the power of effective legislation concerning sub-
jects over which Congress also has power was stated in
these words (summarizing language of Mr. Justice Storey
in *Houston* v. *Moore*, 5 Wheat. 1, at p. 49, 5 L. Ed. 19) ; in
*Gilman* v. *Philadelphia*, 3 Wall. 713, at p. 730, 18 L. Ed. 96 :
'The States may exercise concurrent or independent power in
all cases but three: 1. Where the power is lodged exclusively
in the Federal Constitution; 2. Where it is given to the Unit-
ed States and prohibited to the States; 3. Where, from the
nature and subjects of the power, it must necessarily be ex-
ercised by the National Government.' Illustrations of the
scope and application of those principles are found in nu-
merous decisions, where they are amplified and made even
more clear in the judgments rendered.   In *Fox* v. *Ohio*, 5
How. 410 (12 L. Ed. 213), the plaintiff in error was in-
dicted for 'passing and uttering' counterfeit coin contrary
to a statute of Ohio.   The United States Constitution, by
article 1, section 8, confers upon Congress power to punish
counterfeiting.   In holding valid the conviction under the
State statute, it was said at pages 434-435 of 5 How. (12
L. Ed. 213) : 'It has been objected on behalf of the plaintiff
in error, that if the States could inflict penalties for the
offense of passing base coin, and the Federal government
should denounce a penalty against the same act, an individ-
ual under these separate jurisdictions might be liable to
be twice punished for the one and same crime, and that
this would be in violation of the fifth article of the amend-
ments to the Constitution, declaring that no person shall
be subject for the same offense to be twice put in jeopardy
of life and limb.   Conceding for the present that Congress
should undertake and could rightfully undertake to pun-
ish a cheat perpetrated between citizens of a State because

92

an instrument in effecting that cheat was counterfeit coin of the United States, the force of the objection sought to be deduced from the position assumed is not perceived; for the position itself is without real foundation. The prohibition alluded to as contained in the amendments to the Constitution * * * was not designed as limits upon the State governments with reference to their own citizens. They are exclusively restrictions upon Federal power, intended to prevent interference with the rights of the States and of their citizens. * * * It is almost certain that in the benignant spirit in which the institutions both of the State and Federal systems are administered, an offender who should have suffered the penalties denounced by the one would not be subjected a second time to punishment by the other for acts essentially the same, unless indeed this might occur in instances of peculiar enormity or where the public safety demanded extraordinary rigor. But were a contrary course of policy and action either probable or usual, this would by no means justify the conclusion that offenses falling within the competency of different authorities to restrain or punish them would not properly be subjected to the consequences which those authorities might ordain and affix to their perpetration.' In *Ex parte Siebold,* 100 U. S. 371 (25 L. Ed. 717), the question arose as to the effect of the exercise by Congress of its power over the election of members of Congress upon State laws inflicting punishment for the same wrongful acts inhibited by the act of Congress. It was stated at page 390, *et sequentia,* of 100 U. S. (25 L. Ed. 717), that Mr. Justice Daniels, in delivering the opinion of the court in the case of *United States* v. *Marigold* (9 How. 569) * * * said in reference to *Fox's Case*: 'With the view of avoiding conflict between the State and Federal jurisdictions, this court, in the case of *Fox* v. *State of Ohio,* has taken care to point out that the

same act might, as to its character and tendencies, and the consequences it involved, constitute an offense against both the State and Federal governments, and might draw to its commission the penalties denounced by either, as appropriate to its character in reference to each.' We hold this distinction sound and the conviction was sustained. The subject came up again for discussion in the case of *Moore* v. *State of Illinois* (14 How. 13), in which the plaintiff in error had been convicted under a State law for harboring and secreting a negro slave, which was contended to be properly an offense against the United States under the fugitive slave law of 1793, and not an offense against the State. The objection of double punishment was again raised. Mr. Justice Grier, for the court, said: 'Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both. Substantially the same views are expressed in *United States* v. *Cruikshank* (92 U. S. 542), referring to these cases; and we do not well see how the doctrine they contain can be controverted. A variety of instances may be readily suggested, in which it would be necessary or proper to apply it. Suppose, for example, a State judge having power under the naturalization laws to admit aliens to citizenship should utter false certificates of naturalization, can it be doubted that he could be indicted under the act of Congress providing penalties for that offense, even though he might also, under the State laws, be indictable for forgery as well as liable to impeachment? So, if Congress, as it might, should pass a law fixing the standard of weights and measures, and imposing a penalty for sealing false weights and false measures, but leaving to the States the matter of inspecting and sealing those used by the peo-

ple, would not an offender, filling the office of sealer under a State law, be amenable to the United States as well as to the State? If the officers of election, in elections for representatives, owe a duty to the United States, and are amenable to that government as well as to the State—as we think they are—then, according to the cases just cited, there is no reason why each should not establish sanctions for the performance of the duty owed to itself, though referring to the same act.' In *United States* v. *Amy*, reported in 14 Md. 149, in the course of an opinion by Chief Justice Taney, respecting an indictment under a law of the United States for stealing a letter of value from the postoffice, it was said (14 Md. 152) : 'In maintaining the power of the United States to pass this law, it is, moreover, proper to say, that as these letters, with the money within them, were stolen in Virginia, the party might undoubtedly have been punished in the State tribunals, according to the laws of the State, without any reference to the postoffice act of Congress, because, from the nature of our government, the same act may be an offense against the laws of the United States, and also of a State, and be punishable in both. This was considered and decided in the Supreme Court of the United States, in the case of *Fox* v. *The State of Ohio*, 5 How. 433, and in the case of the *United States* v. *Peter Marigold*, 9 How. 560; and the punishment in one sovereignty is no bar to his punishment in the other.' *Cross* v. *North Carolina*, 132 U. S. 132, 139, 10 Sup. Ct. 47, 33 L. Ed. 287; *Commonwealth* v. *Barry*, 116 Mass. 1. * * * In *Railroad Co.* v. *Fuller*, 17 Wall. 560, at p. 568, 21 L. Ed. 710 (quoting from *Ex parte McNeil*, 13 Wall. 236, 240, 20 L. Ed. 624), occurs this statement: 'In the complex system of polity which prevails in this country, the powers of government may be divided into four classes:

" 'Those which belong exclusively to the National Government.

" 'Those which may be exercised concurrently and independently by both.

" 'And those which may be exercised by the States, but only until Congress shall see fit to act upon the subject.

" 'The authority of the State then retires and lies in abeyance until the occasion for its exercise shall recur.'

"There is here express recognition of a field of legislation, apart from definite constitutional mandate such as is in the eighteenth amendment, over which jurisdiction may be exercised both by Congress and by the States 'concurrently and independently.' "

To the same effect, see *Hendrick's Case,* 5 Leigh (32 Va.) 769; *Jett's Case,* 18 Gratt. (59 Va.) 933.

The eighteenth amendment aforesaid, so far as material, is as follows:

"Section 1. After one year from the ratification of this article, the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all the territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Section 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation."

[2, 3] The Volstead act is contained in 41 U. S. Stat. at Large, 305, Chap. 85, Acts 66th Congress, 1st Session.

We are of opinion that the eighteenth amendment merely created into offenses against the United States conduct consisting in "the manufacture, sale or transportation of intoxicating liquors within" the respective States "for beverage purposes;" whereas, prior to the going into effect of such amendment only the respective States could by State legislation create such conduct into offenses, and then only into offenses against the State. As the Federal Constitution stood prior to the eighteenth amendment, neither by

State statute nor by act of Congress could such conduct be created into Federal offenses. An amendment to the Federal Constitution was necessary in order to bring such conduct within the domain of Federal legislation. This does not present a situation of divided sovereignty with respect to the punishment of such offenses. The Congress and the several States are expressly given "concurrent power to enforce this article by appropriate legislation;" but that provision has reference solely, as we think, to the legislation with respect to the Federal offenses. The Congress is not given power to legislate on the subject of the offenses against the State. That is a police power of the State. None of this is either expressly or impliedly delegated to the Federal government or prohibited to the States by the eighteenth amendment, but on the contrary, is expressly "reserved to the States respectively or to the people" by article X of the Federal Constitution. As shown by the authorities above cited, the same conduct may constitute an offense against the United States and also a distinct offense against the State, and the accused may be punished for both crimes, each sovereignty punishing him for the crime committed against it.

We think that there can be no conflict between the Federal and State legislation on the subject under consideration so long as neither State nor Federal government attempts to interdict the other from dealing with the conduct in question as Federal or State offenses, respectively, as the case may be, and where the legislation of the State is confined to punishing the conduct as State offenses and the legislation of the Federal government is confined to punishing the same conduct as Federal offenses, neither undertaking to nullify the laws of the other enacted and operating as the expression of their edicts, respectively, promulgating the provisions as to what shall be offenses against the respective sovereignties and the punishments therefor.

Such being our view of the subject under consideration, we are of opinion that the character and quantum of the penalties prescribed by the Volstead act for the Federal· offenses aforesaid in no way affect the validity of the State law, because of the fact that different punishments may be imposed for the State offenses which consist in the same conduct of the accused.  The State has legislated and may still further legislate, if it so desires, in its own separate domain in its exercise of the State police power expressly reserved with respect to the State offenses as aforesaid, with which legislation the Federal government is powerless to interfere under the eighteenth amendment. The fact that the State, by the eighteenth amendment, is given the novel power to go outside of its own original domain and aid in legislation to endorse such amendment, and hence, to legislate with respect to the Federal offenses thereby created, can in no way diminish or impair the legislative power of the State within its own exclusive domain.

It is, of course, not meant to say that the· State power of legislation aforesaid may not be incidentally affected and curtailed where it comes in conflict with some Federal legislation with reference to some matter confided to the Federal government by some other provision of the Constitution of the United States than the eighteenth amendment. In such cases the supremacy or non-supremacy of the Federal legislation is to be determined by the well established rules of decision of the Supreme Court on such subject.

What we have said above concerning the State legislation on the subject of the State offenses aforesaid being unaffected by congressional legislation upon the subject of the Federal offenses, although they may consist in the same conduct of the accused, is strengthened by the consideration of the express terms of the Volstead act.  There are a number of provisions in that act which we think expressly recognize the continued validity of State statutes regulating

the traffic in liquor, which create certain conduct in connection with that traffic into State offenses. For example, ·in title 2, section 6, of the Volstead act, provision is made as to the violation of any law of the United States "or of any State regulating traffic in liquor." Again in title 2, section 9, of the Volstead act, reference is made to a permit when "a person has violated the laws of any State with reference to intoxicating liquor." Again, title 2, section 35, of the same act provides that "all provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquors. shall be construed as an addition to existing laws."

[4] Under the view which we take of the subject, any statute which the State may have enacted or may enact, creating or not creating the State offenses aforesaid, would not be in conflict with the Volstead act, or with the eighteenth amendment, unless and only to the extent that such State statute should attempt to nullify the Federal law creating the Federal offenses aforesaid. The State law could not authorize the commission of the offenses condemned by the Federal law so as to permit the offender to go free of punish-. ment under the Federal law. It can, however, impose or withhold punishment for such conduct as State offenses, or impose different punishment for State offenses consisting of the same conduct.

The Supreme Court of Massachusetts, in the *Nickerson Case, supra*, takes a further position to the effect that the validity of an existing State statute on the subject under consideration is also to be upheld as legislation in aid of the enforcement of the eighteenth amendment in so far as its provisions can be said to be "concurrent" with and are exerted in support of the main object of the eighteenth amendment, and make contribution to the same general aim. See also the case of *Jones* v. *Hicks* (Ga.), 104 S. E. 771, which

likewise holds that the eighteenth amendment and Volstead act "did not impair the integrity of any existing State statute to enforce prohibition, nor can it interfere with the enactment of any future legislation by the State for that purpose." The majority opinion in such case, however, rests the decision for the most part upon the position which is taken in the *Nickerson Case* as just mentioned. But in view of the conclusions we have reached, which are expressed above, it is unnecessary for us to express any opinion upon the correctness or incorrectness of such position. The decisions in both of these cases are the same in result as our holding aforesaid, although some of the reasoning on which they are based is different from that which we have employed.

The case will be affirmed.

*Affirmed.*