## STATE *vs.* ARTHUR GAUTHIER.

### York.   Opinion October 6, 1922.

*There is no valid Maine Statute defining the term "intoxicating liquor." Chapter 235*
*of the Laws of 1919, has been held unconstitutional.   The statute of this State has*
*not been abrogated in whole or in part by the Eighteenth Amendment to the*
*   U. S. Constitution, or federal legislation.   Under the Maine Statute*
*in prosecutions of this nature the intoxicating quality of*
*liquor must be proved as a fact, and it must be*
*proved also that the liquor is "capable of*
*being used for tippling purposes*
*or as a beverage."*

The Eighteenth Amendment to the Federal Constitution prohibiting traffic in
intoxicating liquor provides that "the Congress and the several states shall have
concurrent power to enforce this Article by appropriate legislation."

To be appropriate within the meaning of the amendment legislation must be
consistent with prohibition not hostile to it, must help not hinder, support not
defeat, promote prohibition and not thwart it.   License and local option laws,
or at all events the license feature of such laws, are inappropriate.   They are
inconsistent with prohibition.   They tend to defeat or thwart it.   Prohibitory
laws while differing one from another in definitions, procedure and in penalties
are appropriate.   The prohibitory law of Maine is appropriate legislation and
is not abrogated by the Eighteenth Amendment or by any Federal legislation.

The definition of intoxicating liquor contained in the Volstead Act was not
intended to and does not control, enter into, modify or in any way affect our
state legislation.

In case of irreconcilable conflict between State and Federal Statutes, even those
which under the Eighteenth Amendment are concurrent, pending final decision
by the Supreme Court of the United States, State Courts must treat the Federal
Statutes as supreme.   But there is no irreconcilable conflict between the Maine
statute and the Volstead Act in respect to definition of intoxicating liquor con-
tained in the latter.

The Volstead Act defines intoxicating liquor as "any spirituous, vinous, malt or
fermented liquor, liquids and compounds containing one-half of one per cent.
or more of alcohol by volume which are fit for use for beverage purposes."
This definition applies to prosecutions in the United States Courts under the
Federal Statutes.   It is not and does not purport to be controlling in prosecu-
tions in the State courts under State statutes.   In prosecutions in the State
courts, therefore, it is not sufficient to show that the liquor which is the subject
of the prosecution contains one half of one per cent. or more of alcohol and is
fit for use for beverage purposes.   It must appear that it is in fact intoxicating
and also capable of use as a beverage.

The respondent offered four letters written by Federal officials. The most that these letters, if admissible, prove is that Bosak's Horke Vino contains an undisclosed percentage of various ingredients in some unspecified degree laxative, and that the compound is classed as a medicine. This is not decisive. A liquid may be in some small degree laxative and be classed as a medicine and still be intoxicating in fact and capable of use as a beverage.

The court is satisfied that the liquor found in respondent's possession and seized was an intoxicating beverage masquerading as a medicine.

On report. The respondent was adjudged guilty of the illegal possession of intoxicating liquor in the Sanford Municipal Court and on appeal the case went to the Supreme Judicial Court, thence to the Law Court on report. That the respondent had in his possession, intended for sale in this State, a quantity of Bosak's Horke Vino, a so-called medicinal preparation containing more than eighteen per cent. of alcohol, was not disputed. The question at issue was as to whether such preparation was an intoxicating liquor within the purview of the law of this State. Respondent adjudged guilty. Liquor forfeited.

The case is very fully stated in the opinion.

*Edward S. Titcomb, County Attorney,* for the State.

*Francis J. Carney and Lucius B. Sweet,* for respondent.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, WILSON, DEASY, JJ.

HANSON, J., concurring in the result.

DEASY, J. The respondent was arraigned in the Sanford Municipal Court and adjudged guilty of the illegal possession of intoxicating liquor. The case was brought to the Supreme Judicial Court by appeal and to the Law Court on report.

. THE ISSUE.

It is undisputed that the respondent had in his possession, intended for sale in Maine, a quantity of Bosak's Horke Vino, a so-called medicinal preparation containing more than eighteen per cent. of alcohol. Whether Bosak's Horke Vino is an intoxicating liquor within the purview of the Maine law is the point in controversy.

There is no valid Maine Statute defining the term "intoxicating liquor." Chapter 235 of the Laws of 1919 which if fully effectual would adopt as a part of the State Law, the definition contained in the subsequently enacted Volstead Act, is in its attempt to accomplish this result, unconstitutional in that it undertakes to delegate general legislative power. *State* v. *Int. Liquor, Vino Company Claimant,* 121 Maine, 438, 117 Atl., 588.

The problem before us involves consideration of the Eighteenth Amendment, the so-called Volstead Act and the prohibitory statutes of Maine excluding Chapter 235 of Laws of 1919 which has been held unconstitutional.

### The Eighteenth Amendment.

The Amendment omitting formal parts is as follows:

"Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Sec. 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation."

The controversy in this case relates to the construction of the second section of the Amendment, especially the words "concurrent power" and "appropriate legislation."

### The Volstead Act.

This Law (41 Stat. L. 305 Fed. Stat. Ann., 1919, Page 202) was enacted by Congress under the authority of the Eighteenth Amendment. It was intended to be concurrent with legislation by the states. The Act comprises three titles. We are concerned only with the second. This title has thirty-nine sections.

Section 3 prohibits traffic in intoxication liquors. Section 29 provides penalties. Section 1 defines the phrase intoxicating liquor, "when used in Title II and Title III of this Act." It does not undertake to define the term when used in concurrent legislation by states. By this definition intoxicating liquor includes certain specified liquors "and in addition thereto any spirituous, vinous, malt or

fermented liquor, liquids and compounds . . . . containing
one half of one per cent or more of alcohol by volume which are fit for
use for beverage purposes." The other sections prescribe procedure
and various details including the granting of permits for keeping and
selling liquor for non-beverage purposes.

UNITED STATES SUPREME COURT CASES.

The Supreme Court of the United States has final jurisdiction in
all matters involved in this case. In the case of *Rhode Island* v.
*Palmer*, 253 U. S., 350, 64 L. Ed. 946 important principles are estab-
lished. The Volstead Law is held not to transcend the powers
granted to Congress by the Eighteenth Amendment. It finally
disposes of the theory that concurrent means joint and the further
theory that the word concurrent implies a division of powers along
lines separating interstate from intra-state fields. It decides that
an act to be appropriate must be consistent with prohibition and
must not tend to defeat or thwart it. But neither the case of *Rhode
Island* v. *Palmer* nor the later case of *Vigliotti* v. *Pennsylvania*,
66 L. Ed., 389 passes upon the questions involved in this opinion.

It is contended that the state prohibitory law has been invalidated
by the Amendment and the federal law or if not invalidated, then in
part superseded or modified by having read into it the definition of
intoxicating liquor contained in the Volstead Law to wit, liquor
"containing one half of one per cent or more of alcohol by volume."

STATE STATUTE NOT AFFECTED BY VOLSTEAD ACT.

It is too plain to require extended discussion that the Maine statute
has not been abrogated in whole or in part by the Amendment or the
Federal Act. Our statute is consistent with prohibition. It does
not tend to defeat or thwart it. It is appropriate legislation. The
authorities hereinafter cited under another branch of the case support
this view.

More plausible is the contention that the definition of intoxicating
liquor contained in the Volstead Act reads itself into the Maine
statute and, without valid state legislation, becomes in effect a part
of the statute. The other and better supported theory is that
Congress having in this field not supreme but concurrent power has

no authority to control the concurrent legislation of the state and further that the definition contained in the Volstead Act purports to apply only to prosecutions under that Act, and not to prosecutions in the State courts under State statutes. In the leading and frequently cited case of *Commonwealth* v. *Nickerson*, 236 Mass., 295, 128 N. E., 284 Chief Justice Rugg says: "We assume that the definition of intoxicating liquors contained in the Volstead Act cannot be imported into our statute without legislative action."

We believe that this assumption is well grounded. Congress having merely concurrent power to legislate on this subject cannot control the legislation of states having like concurrrent power. Moreover, the definition contained in the Volstead Act purports to relate only to that act and not to state legislation.

However, the theory that a state court in construing a state statute is bound by the Volstead definition has the support of respectable authority and we have given it careful consideration.

ARTICLE VI OF CONSTITUTION. SUPREME LAW.

It is urged that Congress has the exclusive power of defining the term intoxicating liquor as employed in the Eighteenth Amendment by reason of Article VI of the Constitution which reads as follows:—

"This Constitution and the laws of the United States which shall be passed in pursuance thereof . . . . shall be the Supreme law of the land."

But the Eighteenth Amendment is as much a part of the Constitution as Article VI. The Amendment is also the supreme law of the land. It enacts what in effect is a modification of that part of Article VI which makes Congressional legislation supreme. It grants to Congress power to enact appropriate intra-state legislation, but makes that power, not paramount, supreme or exclusive, but concurrent with the power of the states. Against this it is contended that the concurrent power granted by the Amendment relates to enforcement, as distinguished from the power to define.

THEORY THAT CONGRESS HAS EXCLUSIVE POWER OF DEFINING.

It is urged that the Eighteenth Amendment gives to or leaves with the states concurrent power to enforce prohibition by providing for

the purpose courts, officers and penalties, but that the power of defining the subject of it, as distinguished from the power of enforcing it, remains exclusively in Congress, not under the Amendment, but under Article VI making constitutional Acts of Congress supreme. *Johnson* v. *State,* (Fla.), 89 So., 117. *Wood* v. *Whitaker,* (Fla.), 89 So., 119.

We think that this theory is unsound—

(1)  If the state may penalize and prosecute the manufacture and sale of only such liquor as Congress may declare to be intoxicating the power of the state is in no true sense concurrent, but is rather ancillary and subordinate, indeed is hardly more than an "insubstantial shadow." *Commonwealth* v. *Nickerson,* 236 Mass., 295.

(2)  The term "intoxicating liquor" does not need statutory definition. In the absence of such definition it is for courts and juries to determine as a fact whether liquor is intoxicating. The Legislature of Maine has never found it necessary to define the term, whether as liquor having a specified alcoholic content, or otherwise. Further specific definition is for the purpose of aiding enforcement. In our opinion Congress adopted the definition for no purpose except to facilitate enforcement.

(3)  The Eighteenth Amendment prohibits the sale &c. of intoxicating liquor. Congress has no power to prohibit traffic in non-intoxicating liquor within states. Had it undertaken to forbid traffic in intoxicating liquor and also in non-intoxicating liquor containing one half of one per centum or more of alcohol, such act would undoubtedly be held unconstitutional so far as it relates to non-intoxicating liquor. What the Volstead Act does, we think is to create a conclusive presumption that liquor containing alcohol in the proportion specified is intoxicating. Such a presumption applies to prosecutions in the federal courts for violation of the Volstead Act. It is a corollary of the power of enforcing.

(4)  Congress derives its power to enact intra-state prohibitory legislation exclusively from the Eighteenth Amendment. The almost unlimited police power of the States ante-dates the Constitution. The states' police power is not taken away expressly. The grant of concurrent power to Congress does not take it away by necessary implication.

"The police power reserved by the states is neither abrogated nor abridged by Amendment 18." *Hess* v. *State,* (Ind.), 135 N. E., 145;

See also *Allen* v. *Commonwealth*, (Va.), 105 S. E., 589. *People* v. *Wicka*, 192 N. Y. S., 636. Ex parte Volpi (Cal.), 199 Pac., 1090.

(5) It is said that the Eighteenth Amendment contemplates that in its enforcement there shall be uniformity throughout the nation, and that for this reason Congress should be held to have the exclusive power of defining the subject of constitutional prohibition.

But uniformity throughout the nation is not contemplated except in prosecutions under the federal law. All authorities hold that the state may establish its own procedure and prescribe its own penalties. Moreover, it is clear that no state is required to have a prohibitory law, or any law on the subject of intoxicating liquor. If it enacts an inappropriate law the amendment instantly invalidates it unless it contain a separable appropriate provision which may survive. But the state may leave the liquor problem to the care of federal courts and officers. There is no requirement of uniformity in state and national enforcement.

## THEORY SUPPORTED BY REASON AND AUTHORITY.

We believe this to be the true theory:—The powers of Congress and of the State Legislatures are under the Eighteenth Amendment independent and while both are subject to the organic law, and while acts of Congress have nation-wide territorial application, neither is within a state paramount. If the state law is not "appropriate legislation" it is for that reason void. If it is appropriate legislation it is valid. This presents a constitutional question ultimately determinable by the Supreme Court of the United States, but in the first instance to be determined ordinarily by the state court. As to law relating to irreconcilable conflict between federal and state legislation, see infra.

To be appropriate, legislation must be consistent with prohibition, not hostile to it, must help, not hinder, support, not defeat, promote prohibition and not thwart it. *Rhode Island* v. *Palmer*, supra. License and local option laws or at all events the license feature of such laws are inappropriate. They are inconsistent with prohibition. They tend to defeat or thwart it. Prohibitory laws while differing from one another in definitions, procedure and in penalties are appropriate.

The Amendment in providing for concurrent power to legislate is based upon the principle that the same conduct may be an offense against the state and also against the nation. The same act may offend against the sovereignty of the State and that of the United States. Prior to the adoption of the Eighteenth Amendment the sale or keeping for sale of intoxicating liquor within a state could only be an offense against the state sovereignty. Under the police power the state could forbid such acts but Congress had no power whatever in the premises. Since the passage of the Eighteenth Amendment the sale and keeping for sale of intoxicating liquor for beverage purposes in a state offends against the sovereignty of the nation as well as that of the state. The new power vested in Congress applies to the whole nation and all places subject to its dominion, but is otherwise parallel with and not superior to the state police power.

The phrase "concurrent power" is new in the constitution, but has been frequently used in reference to relations somewhat analagous to that now newly created. Take the case of a robbery of the mails on a state highway. Here one act violates both the state and the national sovereignty. Here while the constitution has not specifically and in terms so provided, Congress and the State Legislature have concurrent power. Congress has power to define the crime against the nation and to impose penalties to be enforced by the federal courts. The State Legislature has power to define the crime (the same act) against the state and to impose penalties to be enforced by the state courts. The definitions contained in the Act of Congress do not enter into the State statutes.

See the following cases in which the concurrent power of the nation and state to punish the same act have been recognized. *U. S.* v. *Amey*, 24 Fed. Cas., 792 (Stealing a letter from a post office). *Fox* v. *Ohio*, 5 How., 410. 12 L. Ed., 213 (Cheating by means of counterfeit U. S. Coin). Ex parte Siebold, 100 U. S., 371, 25 L. Ed. 717 (Violation of state law in election of member of Congress). *Cross* v. *North Carolina*, 132 U. S. 132, 33 L. Ed. 287 (Forgery in making false entries on books of a national bank).

The authorities generally support the view herein expressed. "It (the 18th Amendment) impairs no right theretofore existing in the state except that of acting in repugnance to the Amendment." *State* v. *Ceriani*, (Conn.), 113 Atl., 316.

State "did not surrender any of its control under the (18th) Amendment except the power to pass legislation hostile to it." *People* v. *Wicka,* 192 N. Y. S., 638.

"State statute which adopts" means different from those adopted by Congress if such means do not conflict with the efficacious enforcement of federal legislation is within the purview and meaning of the amendment. *Youman* v. *Commonwealth,* (Ky.) 237 S. W., 6.

"We reject the view that the legislation of Congress will supersede and abrogate the laws of the state which are appropriate for the enforcement of the Amendment." *Jones* v. *Hicks* (Ga.), 104 S. E., 771.

"The same conduct may constitute an offense against the United States and also a distinct offense against the state and the accused may be punished for both crimes each sovereignty punishing for the crime committed against it."

*Allen* v. *Commonwealth,* (Va.), 105 S. E., 589.

"Though an exception may be in violation of the federal law on the subject a defendant may not be indicted and convicted in the state court for violation of a state statute which contains an exception exculpating him until our Legislature has acted in the matter and passed a statute that condemns him." *State* v. *Barksdale,* (N. C.), 107 S. E., 508.

It was not "intended that the right of the states to pass appropriate legislation to enforce the prohibition would be more restrictive than the power conferred upon Congress to effect the same result save that the laws of Congress would affect all the people in the United States, while the laws of the state would only affect those within its boundaries." Ex parte Gilmore, (Texas), 228 S. W., 203.

"But so long as the legislation of a state actually seeks to enforce by appropriate legislation under the second section of the amendment what is prohibited by the first no valid objection can be made even though the state law may differ from that of Congress." *State* v. *District Court,* 58 Mont., 684-194 Pac., 308.

"The 18th Amendment permits the passage and enforcement of laws which tend to the enforcement of the amendment that power being specifically reserved as concurrent with the power of the Federal government." *State* v. *Turner,* (Wash.), 196 Pac., 638. *State* v. *Woods,* (Wash.), 198 Pac., 737.

"Should the federal government and a state differently define the term intoxicating liquors it appears that both enactments would be equally binding upon the people of the state, the one enforcible exclusively through the federal courts and the other through the courts of the state." Ex parte Volpi (Cal.), 199 Pac., 1093.

"The Volstead Act manifests no intent on the part of Congress to supersede or suspend state statutes not directly repugnant thereto on the same subject. Even if under the Eighteenth Amendment Congress has the clear power to do so, its enactment would not be given that effect except in instances where its design to accomplish that result is plain and the repugnance between the federal and state statute is absolute, positive and irreconcilable so that both cannot stand together." *Commonwealth* v. *Nickerson*, 236 Mass., 295.

If space permitted, an analysis of the above-cited cases would strengthen the support that this opinion receives from the above excerpts. For example take *Commonwealth* v. *Nickerson*, supra, pronounced by a competent commentator to be "easily the leading case among state decisions." Prof. Dowling in Minnesota Law Review, Volume 6, No. 6. The license feature of the Massachusetts statute was held invalid. The state law minus the license feature was sustained and enforced notwithstanding that its definition was different and by reason of its greater permitted alcoholic content less drastic than that of the federal law.

PRIMA FACIE SUPREMACY OF CONGRESSIONAL ACTS.

The Federal Supreme Court determines finally whether in any case Congress has supreme power under Article VI or the states and the people have such supreme power guaranteed to them by the Tenth Amendment. Pending determination by the courts, to avoid the calamity of "forcible collision between the two governments" the United States Supreme Court has held that in case of conflict, Acts of Congress shall have "temporary supremacy until judicial decision." *Tarbles Case*, 13 Wall., 407.

Long after Tarbles Case was decided the Eighteenth Amendment was adopted. This gives to the federal and state legislative bodies concurrent power over certain subjects and controversies, to wit, those connected with prohibition.

But here again notwithstanding the federal and state legislative power is concurrent the authorities hold that in case of "actual repugnancy" (*Powell* v. *State*, Ala., 90 S. 138) "repugnancy or conflict that cannot be reconciled." (Ex parte Crookshank, 269 Fed., 980) or legislation by Congress and states "irreconcilable so that both cannot stand together," (*Commonwealth* v. *Nickerson*, supra.) Constitutional Acts of Congress are to be held supreme.

If the state statute is not "appropriate legislation," it is void for that reason and not because of repugnancy to an Act of Congress. It is not necessary to decide whether there can be an irreconcilable conflict between two acts both of which are appropriate within the meaning of the amendment for it is clear that there is no such repugnancy between the Maine and Federal Statutes in respect to the definition of intoxicating liquor. The concurrent statutes have the same dominant purpose. They forbid the same thing, to wit, traffic in intoxicating liquor. Under the state statute enforced in state courts, the intoxicating quality of liquor must be shown. Under the federal statute enforced in the United States courts it is presumed from proof of alcoholic content. It would be a perversion of language to say that this difference in practice creates an irreconcilable conflict. Applying the above quoted test prescribed by the Massachusetts Courts. "The intent on the part of Congress (assuming that it has power) to supersede or suspend the state statute" is not plain. The *contrary intent* is plain. The repugnance between the statutes is not "absolute, positive and irreconcilable so that both cannot stand together." There is *no repugnance* in the sense in which the word is used.

RECAPITULATION.

We hold that the Maine prohibitory statute is "appropriate legislation" and is not abrogated by the Eighteenth Amendment or federal legislation.

The definition of intoxicating liquor contained in the Volstead Act was not intended to and does not control, enter into, modify or in any way affect our state legislation.

In case of irreconcilable conflict between state and federal statutes even those which under the Eighteenth Amendment are concurrent, pending final decision by the Supreme Court of the United States, state courts must treat the federal statutes as supreme.

There is no irreconcilable conflict between the Maine Statute and the Volstead Act in respect to the definition of intoxicating liquor contained in the latter.

The present case is therefore governed by the Maine Statute under which in prosecutions of this nature the intoxicating quality of liquor must be proved as a fact.

It remains to be determined whether the liquor found in the respondent's possession is in fact intoxicating. *State* v. *Piche,* 98 Maine, 348.

Of this we have no doubt. A witness testified that it had the same effect upon him as did the drinking of "checkberry or alcohol or anything of that kind." Moreover, its undisputed alcoholic content exceeding eighteen per cent. justifies, if not requires a finding of intoxicating quality.

The state has the further burden of proving that the liquor is "capable of being used for tippling purposes or as a beverage." *State* v. *Intoxicating Liquor,* 118 Maine, 198. This burden is sustained. Witnesses testified that it tasted like port wine. It was sold as a beverage. This is not the test, but is some evidence as against the respondent that it is capable of such use. *State* v. *Sayers,* 121 Maine, 339, 117 Atl., 235. When the witness Berube said to the respondent "That's pretty good port wine" he replied "You bet it is good stuff."

The fact that the respondent said that he would sell only one bottle at a time shows that the liquid was sold as a beverage. He substituted for the law of the state a rule of his own and then proceeded to violate both.

The respondent offered four letters written by federal officials. These letters were excluded. Exceptions were reserved. The case was then by consent reported. The exceptions were thus waived. The case was reported for the court to determine the rights of the parties upon the "evidence introduced." When the letters were offered to be introduced they were excluded. However, the letters are set forth in the printed case and are probably intended by both parties to be considered.

Assuming that they are not mere hearsay and that the liquor referred to in them is the same as that found in the respondents possession, they do not overcome the state's evidence. The most that they prove is that Bosak's Horke Vino contains an undisclosed percentage of various ingredients in some unspecified degree laxative,

and that the compound is classed as a medicine. This is not decisive. A liquid may be in some small degree laxative, and be classed as a medicine, and still be intoxicating in fact and capable of use as a beverage.

We think that the liquor found in the respondent's possession and seized was an intoxicating beverage masquerading as a medicine.

*Respondent adjudged guilty.*
*Liquor forfeited.*