THE PEOPLE OF THE STATE OF NEW YORK, on the Complaint of MATTHEW W. COLSTON, Plaintiff, v. JAMES VITALE, Defendant.

Magistrates' Court of City of New York, Borough of Brooklyn, First District, April 2, 1934.

*William F. X. Geoghan, District Attorney [Lewis Joseph, Assistant District Attorney], for the plaintiff.*

*Edward J. McCann [Louis E. Drago and Milton I. Weintraub of counsel], for the defendant.*

HUGHES, City Magistrate. The complaint charges the defendant with violating section 132-a of chapter 180 of the Laws of 1933, as added by chapter 819 of the Laws of 1933 (commonly known as the New York State Alcoholic Beverage Control Law), in that he sold a drink of whisky to the complainant, a police officer, without have first procured a license.

The defendant moves to dismiss the complaint upon the ground that the statute is unconstitutional. The situation disclosed here has never arisen heretofore in our history.

Chapter 819 of the Laws of 1933 was enacted by the Legislature of the State of New York and approved by the Governor on the 29th day of August, 1933. The statute was passed " to amend the alcoholic beverage control law, in relation to providing temporarily for the control and regulation of the manufacture, sale and distribution of liquors and wines in the event of the repeal of the eighteenth amendment to the constitution of the United States of America prior to April first, nineteen hundred and thirty-four."

Section 132-a, subdivision 1, reads: " Notwithstanding the repeal, prior to April first, nineteen hundred and thirty-four, of the eighteenth article of amendment to the constitution of the United States, no liquors or wines as hereinafter defined, shall either be manufactured for sale or sold at wholesale or retail within the state without a license therefor issued by the state board as hereinafter provided."

Subdivision 2 defines certain words. Subdivision 3 makes clear the purpose of the enactment. It provides that " In order to foster and promote temperance in the consumption of liquors and wines and for the purpose of instituting a sound and careful control and regulation of the manufacture, sale and distribution of liquors and wines during the interim period, the state board shall, in addition to its regular powers under this chapter, have the power." The powers granted are then set forth and in particular subdivision E reads: " To adopt such rules and regulations  *  *  *  as will effectively insure temperance in the consumption of liquors and wines in the state and promote obedience to law and order." Subdivision 5 fixes the fees for licenses.

Section 3 reads as follows: " This act shall take effect on the day coincident with the day when the repeal of the eighteenth article of amendment to the constitution of the United States of America is effected, except that the state alcoholic beverage control board may prior thereto prepare any and all blanks necessary for the administration of section one hundred thirty-two-a of the alcoholic beverage control law, as added by this act, and receive any application for the issuance of any of the licenses specified in such section."

Pursuant to the statute and since December 5, 1933, the New York State Alcoholic Beverage Control Board has regulated and controlled the traffic in intoxicating liquors.

The Eighteenth Amendment was ratified on January 28, 1919, and took effect on January 29, 1920. (*Regal Drug Corp.* v. *Wardell,* 273 Fed. 182.) It reads as follows:

" Section 1. After one year from the ratification of this article, the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and of territories subject to the jurisdiction thereof for beverage purposes is hereby prohibited.  *  *  *

" Section 2. The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

On December 5, 1933, the Eighteenth Amendment was repealed and laid to rest. Apparently few tears were shed, and the sorrowing voices, if any, did not rise above a murmur. The court,

however, has been asked to revivify it for the purpose of this action.

It is with great reluctance that courts will declare invalid a legislative enactment upon the ground that it is repugnant to the State and Federal Constitutions. Every presumption favors the validity of the statute.

I shall assume, without deciding, that chapter 819 became a law on August 29, 1933. (N. Y. Const. art. 3, § 4; art. 4, § 9; Legislative Law, § 41.) I shall also assume, without deciding, that the Legislature may pass a law *in præsenti*, to take effect upon the happening of some future event, which may be certain or uncertain. (*Gardner* v. *Ginther*, 232 App. Div. 296, 305; affd., 258 N. Y. 578.) This leaves for discussion the question which has been raised.

It is earnestly contended in the brief submitted by counsel for the defendant that the statute is unconstitutional in that the Legislature was without power to legislate with respect to the manufacture or sale of intoxicating liquors by reason of the Eighteenth Amendment being in full force and effect at the time. The argument is not without merit, but is untenable and is based upon an erroneous assumption.

The police power lies within that great body of powers reserved to the States by the Tenth Amendment. Very recently the Supreme Court of the United States has considered the police powers of the State. In *Home Building & Loan Assn.* v. *Blaisdell* (290 U. S. 398, at p. 437), Chief Justice Hughes said: " This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people." And in *Nebbia* v. *New York* (291 U. S. 502, 524; 54 S. C. R. 505, at p. 510) Justice Roberts of the same court said: " Thus has this court from the early days affirmed that the power to promote the general welfare is inherent in government."

Of course, as was said in *Meyer* v. *Nebraska* (262 U. S. 390), the " Determination by the legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts. *Lawton* v. *Steele*, 152 U. S. 133, 137." It seems also that the Supreme Court will not bind itself by the doctrine of *stare decisis* in questions relating to the police power. (Compare *Lochner* v. *New York*, 198 U. S. 45; *Muller* v. *Oregon*, 208 id. 412, and *Bunting* v. *Oregon*, 243 id. 426; also *Wolff Co.* v. *Industrial Court*, 262 id. 522, with *Nebbia* v. *New York*, *supra*.)

It is well settled that the subject of intoxicating liquors falls under the police power and the State had full authority to regulate

or prohibit the handling or use thereof. (*Mugler* v. *Kansas*, 123 U. S. 623.) Did the adoption of the Eighteenth Amendment divest the State of its police power so as to prohibit the passage of the act in question? I am of the opinion that it did not. In *State* v. *Gauthier* (121 Me. 522; 118 Atl. 380), regarding the effect of the amendment on the police power of the State, the court said: " Congress derives its power to enact intrastate prohibitory legislation exclusively from the Eighteenth Amendment. The almost unlimited police power of the state antedates the constitution. The states' police power is not taken away expressly. The grant of concurrent power to Congress does not take it away by necessary implication." This has been exemplified, without any intervention by the courts or otherwise, in the arrests and convictions by both the Federal and State government for violation of the Volstead Act. It has also been held that the Eighteenth Amendment neither abridged nor abrogated the police power reserved to the States by the Tenth Amendment to the United States Constitution. (*Hess* v. *State*, 192 Ind. 50; 135 N. E. 145.)

The Legislature could take cognizance of the conditions that existed in the State during the period that the Eighteenth Amendment was in force. The traffic in intoxicating liquors was controlled by bootleggers, hi-jackers and gunmen. There were countless numbers of speak-easies which were virtually nests of criminals and persons of low repute. The purchase of liquor from a racketeer who was the so-called boss of a locality was compulsory, and a refusal frequently meant bodily harm or death. Respect for law and order had sharply declined. The health and morals of the public had been endangered by the drinking of the almost poisonous liquor sold by unlawful means. Finally in August, 1933, repeal was imminent, for almost the required number of States by constitutional convention had ratified the amendment repealing the Eighteenth Amendment. It was said in *Home Building & Loan Assn.* v. *Blaisdell* (*supra*, at p. 422), quoting from the decision of the State court in the same case: " The members of the legislature come from every community of the state and from all the walks of life. They are familiar with conditions generally in every calling, occupation, profession, and business in the state. Not only they, but the courts must be guided by what is common knowledge." The citizens of New York looked to the Legislature to protect their rights with reference to each other and each other's property. The Legislature responded and by its enactment undertook to regulate the subject of intoxicating liquors coincident with repeal. Perhaps it may be urged that the Legislature should have passed a prohibition act to be effective until such time as

appropriate legislation could be passed, but that is a political and not a judicial question.

The statute in question was enacted to protect the public welfare and was a lawful exercise of the police power. The decision in the *National Prohibition Cases* (253 U. S. 350) is not controlling here. The act in question does not authorize or sanction the manufacture, sale or transportation of intoxicating liquors prior to repeal. The creation of the necessary machinery so that the properly constituted authorities could function coincident with repeal was for the public convenience and proper.

I am, therefore, of the opinion that when a constitutional amendment which relates to a subject that falls under the police power is about to be repealed, the Legislature, exercising the inherent power of a sovereign State, may pass appropriate legislation to take effect coincident with repeal. Just when it may be said that repeal is probable or a certainty is a matter to be determined by the legislative body, except that it must be reasonable. Events have proved that the statute considered was not unreasonable in that respect.

The motion to dismiss is, therefore, denied.